*Witzke v. Bouchard, et al*.
**Case No. 22-cv-13070**

## **EXHIBIT 2**

**State Appellate Court Complaint for Writ
of Superintending Control**

S T A T E   O F   M I C H I G A N

IN THE COURT OF APPEALS

IN RE SCOTT ANDREW WITZKE,

Petitioner,                                         Oakland County Circuit Court
No. 2020-274746-FC

                                                 COA No. _____

**SCOTT ANDREW WITZKE**
Petitioner, *in pro per*
336 N. Saginaw Street
Pontiac, MI 48342
Telephone: (734) 496-5895
Facsimile: (734) 823-1325
Email: scottawitzke@gmail.com

**KAREN D. McDONALD (P59083)**
**OAKLAND COUNTY PROSECUTOR**
1200 N. Telegraph Rd.
Pontiac, MI 48341
Telephone: (248) 858-0656
Facsimile: (248) 452-2208
Email: vidac@oakgov.com

**HONORABLE YASMINE I. POLES**
Circuit Judge
6th Judicial Circuit Court
1200 N. Telegraph Rd., Department 404
Pontiac, MI 48341-0404
Telephone: (248) 452-2002
Email: polesy@oakgov.com

**FREDERICK J. MILLER (P41207)**
Attorney for Defendant Raul Contreras
P.O.  Box 349
Metamora, MI 48455
Telephone: (248) 628-0180
Facsimile: (810) 660-7202
Email: fjmp41207@yahoo.com

## **MOTION FOR IMMEDIATE CONSIDERATION**

    **NOW COMES** Petitioner, Scott Andrew Witzke, *in pro per*, who moves

pursuant to MCR 7.211(C)(6) for immediate consideration of his underlying

Complaint for Writ of Superintending Control.  In support of the instant motion

Petitioner states as follows:

1

1.　　The Complaint for Writ of Superintending Control asserts "The Order entered by [the trial judge] on January 26, 2023, violates Petitioner's First Amendment right to communicate with Defendant Raul Contreras and was issued in violation of Petitioner's right to due process which is appropriate before any communications with Defendant Raul Contreras may be enjoined by [the trial judge], contrary to the Due Process Clause of the Fourteenth Amendment.

2.　　"The rights to free speech under the Michigan and federal constitutions are coterminous." *City of Owosso v Pouillon*, 254 Mich App 210, 213-214; 657 NW2d 538 (2002). Accordingly, "federal authority construing the First Amendment may be used in construing Michigan's constitutional free speech rights." *Id* at 214. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S Ct 2673; 49 L Ed 2d 547 (1976) (plurality opinion); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, ---US---; 141 S Ct 63, 67 (2020).

3.　　In this case, as asserted in the underlying Complaint, the trial judge entered the Order at issue without first holding any form of hearing at which Petitioner was permitted to refute the People's spurious allegations and there has been no allegation that any laws have been violated by Petitioner which would warrant or otherwise justify what in essence is a "no-contact" Order that, although couched in terms of Defendant Contreras from being prohibited from having contact

RECEIVED by MCOA 2/2/2023 12:35:06 PM

with Petitioner, in fact infringes upon Petitioner's First Amendment freedoms to have contact with Defendant Contreras.

4.      All parties to the action below have been electronically served through their respective MI-File accounts at the time of submitting the instant action for filing.  The Trial Judge (Hon. Yasmine I. Poles) has been served electronically at judgepoleschambers@oakgov.com and polesy@oakgov.com.

**WHEREFORE**, based on the foregoing, together with the reasons stated in the Brief in Support of Petitioner's Complaint for Writ of Superintending Control, Petitioner Scott Andrew Witzke, *in pro per*, respectfully requests that this Honorable Court **GRANT** the instant Motion for Immediate Consideration of said Complaint.

Respectfully submitted,

Dated at Pontiac, MI this 2nd day
of February, 2023

/s/ Scott A. Witzke
SCOTT ANDREW WITZKE
Petitioner *in pro per*

RECEIVED by MCOA 2/2/2023 12:35:06 PM

3

S T A T E  O F  M I C H I G A N

IN THE COURT OF APPEALS

IN RE SCOTT ANDREW WITZKE,

Petitioner,

Oakland County Circuit Court
No. 2020-274746-FC

COA No. _____

/

**SCOTT ANDREW WITZKE**
Petitioner, *in pro per*
336 N. Saginaw Street
Pontiac, MI 48342
Telephone: (734) 496-5895
Facsimile: (734) 823-1325
Email: scottawitzke@gmail.com

**KAREN D. McDONALD (P59083)**
**OAKLAND COUNTY PROSECUTOR**
1200 N. Telegraph Rd.
Pontiac, MI 48341
Telephone: (248) 858-0656
Facsimile: (248) 452-2208
Email: vidac@oakgov.com

**HONORABLE YASMINE I. POLES**
Circuit Judge
6th Judicial Circuit Court
1200 N. Telegraph Rd., Department 404
Pontiac, MI 48341-0404
Telephone: (248) 452-2002
Email: polesy@oakgov.com

**FREDERICK J. MILLER (P41207)**
Attorney for Defendant Raul Contreras
P.O. Box 349
Metamora, MI 48455
Telephone: (248) 628-0180
Facsimile: (810) 660-7202
Email: fjmp41207@yahoo.com

/

**COMPLAINT FOR WRIT OF SUPERINTENDING CONTROL**

**NOW COMES** Petitioner, Scott Andrew Witzke, *in pro per*, and for reasons more fully explained hereafter, moves this Honorable Court for a writ of superintending control, MCR 7.203(C)(1), directing the trial court to **VACATE** its Order of January 26, 2023, because it violates Petitioner's rights under the First

1

RECEIVED by MCOA 2/2/2023 12:35:06 PM

Amendment to the United States Constitution.  In support of the instant Complaint Petitioner states as follows:

1.      This Court has jurisdiction to issue writs of superintending control to an inferior court under MCR 7.206.

2.      The parties to the criminal action in the circuit court are:

- The People of the State of Michigan who is represented by the Oakland County Prosecutor;

- Raul Contreras who is the defendant and is represented by attorney Frederick J. Miller; and

- Honorable Yasmine I. Poles (P67672) is the assigned circuit court judge in *People of the State of Michigan v Raul Contreras*, Oakland County Circuit Court Docket #2020-274746-FC, and Judge Poles is the Respondent herein.  (Ex 1, Oakland County Circuit Court ROA.)

3.      On or about December 16, 2022, Judge Poles, in the Contreras case, acting *ex parte* and in non-compliance with the provisions of MCR 3.606(A) by any of the parties, entered an Order to Show Cause which directed Petitioner to appear before Judge Poles and show cause, "if any," why he should not be held in contempt of Court.  (Ex 2.)

RECEIVED by MCOA 2/2/2023 12:35:06 PM

2

4.      On or about December 26, 2022, Petitioner filed in the Contreras case a Motion to Vacate Order to Show Cause premised upon the failure of both the parties and Judge Poles from complying with the provisions of MCR 3.606(A).

5.      On or about January 5, 2023, Judge Poles entered an Order Re: Motion to Vacate, which purported to grant Petitioner's Motion to Vacate Order to Show Cause (but which, nevertheless, prohibited Petitioner from certain conduct under the guise of Petitioner purportedly engaging in the unauthorized practice of law, such conduct being prohibited by Judge Poles' Order without any "evidence" having properly been taken to make said determination).  (Ex 3.)

6.      On or about January 26, 2023, at a pretrial proceeding held in the Contreras case (at which Petitioner was present in the courtroom), Judge Poles heard an oral motion brought by Assistant Prosecuting Attorney Jeffrey M. Kaelin (P51249) which requested that Defendant Raul Contreras be prohibited from making or attempting to make any contact with Petitioner directly or through third parties.

7.      During the "hearing" on the People's oral motion, Judge Poles expressly refused to permit Petitioner or Defendant Contreras from responding to the spurious allegations of the Assistant Prosecuting Attorney and, in fact, Judge Poles made an inappropriate statement (*i.e.*, to the effect that Petitioner should have appeared at a non-existent show cause hearing) and, in addition, Judge Poles threatened to (1) hold Petitioner in "contempt" for merely attempting to be heard in

3

RECEIVED by MCOA 2/2/2023 12:35:06 PM

opposition to the factual assertions made by Assistant Prosecuting Attorney Kaelin, and (2) prohibit Defendant Contreras from having any outside communications with others while detained at the Oakland County Jail if he made attempts to contact Petitioner.

7.      On or about January 26, 2023, Judge Poles entered an "Order Granting the People's Motion to Preclude Defendant from Having Contact with Scott Witzke," and said Order states that Defendant Contreras "is to have no contact with Scott Witzke, either direct or through a third party." (Ex 4.)

9.      Prior to the circuit court's entry of the January 26, 2023, Order, neither Petitioner nor Defendant Raul Contreras has either been accused of violating any penal laws or been adjudged guilty of contempt of court for violating any Order of the circuit court.

8.      Petitioner has no legal recourse through the State's appellate review system to seek review of the January 26, 2023, Order of Judge Poles because Petitioner is not a party to the action in which said Order was entered and Petitioner himself is directly not prohibited from doing anything.

**CLAIM FOR ISSUANCE OF WRIT OF SUPERINTENDING CONTROL**

9.      The Order entered by Judge Poles on January 26, 2023, violates Petitioner's First Amendment right to communicate with Defendant Raul Contreras and was issued in violation of Petitioner's right to due process which is appropriate

4

RECEIVED by MCOA 2/2/2023 12:35:06 PM

before any communications with Defendant Raul Contreras may be enjoined by Judge Poles, contrary to the Due Process Clause of the Fourteenth Amendment.

## **RELIEF REQUESTED**

**WHEREFORE**, Petitioner Scott Andrew Witzke, *in pro per*, respectfully requests that this Honorable Court **GRANT** the writ of superintending control and **ORDER** Judge Yasmine I. Poles to **VACATE** the January 26, 2023, Order Granting the People's Motion to Preclude Defendant from Having Contact with Scott Witzke.

Respectfully submitted,

Dated at Pontiac, MI this 2nd day
of February, 2023
                                        */s/ Scott A. Witzke*_____
                                        SCOTT ANDREW WITZKE
                                        Petitioner *in pro per*

## **VERIFICATION**

"I declare under the penalties of perjury that this Complaint for Writ of Superintending Control has been examined by me and that its contents are true to the best of my information, knowledge, and belief."

Executed at Pontiac, MI this 2nd day
of February, 2023
                                        */s/ Scott A. Witzke*_____
                                        SCOTT ANDREW WITZKE
                                        Petitioner *in pro per*

RECEIVED by MCOA 2/2/2023 12:35:06 PM

EXHIBIT 1

# Court Explorer

---

🖉  Register of Actions           ← Go Back

**Case Number**
2020-274746-FC
**Entitlement**
PEOPLE vs. CONTRERAS RAUL
**Judge Name**
YASMINE I. POLES
**Case E-Filed**
YES
**Case Filed**
07/24/2020
**Case Disposed**
00/00/0000

| Date | Code | Desc |
|------|------|------|
| 01/31/2023 | SEN | SENT TO SUP CT/ON CD/USPS/SS |
| 01/30/2023 | ORD | ORDER FILED FINAL TRIAL |
| 01/26/2023 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 01/26/2023 | ORD | ORDER FILED DFT TO HAVE NO CONTACT W/SCOTT WITZKE |
| 01/26/2023 | PTH | PRE-TRIAL HELD ON RECORD |
| 01/26/2023 | M | MOTION PRECLUDE CONTACT WITH WITZKE - GRANTED |
| 01/26/2023 | APR | DATE SET FOR TRIAL ON 05302023 08 30 AM Y 11 |
| 01/26/2023 | | PROCEEDING TO BE HELD IN-PERSON |
| 01/25/2023 | TRN | TRANSCRIPT FILED MTN HRG 01/04/23 |
| 01/23/2023 | NTC | NOTICE FILED REQ FOR FILE SUP CT |
| 01/19/2023 | APP | APPEARANCE FILED /DEMAND FOR DISCOVERY/DFT |
| 01/19/2023 | MPS | MIFILE PROOF OF SERVICE FILED |
| 01/09/2023 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 01/06/2023 | ORD | ORDER FILED DENY DFT MTN TO QUASH |
| 01/05/2023 | ORD | ORDER FILED RE MTN TO VACATE |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

Court Explorer Oakland County, Michigan

| Date | Code | Desc |
|------|------|------|
| 01/04/2023 | OTH | ZOOM VIDEO APPEARANCE |
| 01/04/2023 | OTH | WITZKE MOTION VACATE SHOW CAUSE - G |
| 01/04/2023 | DM | DEFENSE MOTION MOTION TO QUASH - DENIED |
| 01/04/2023 | APR | DATE SET FOR PRETRIAL ON 01262023 01 00 PM Y 11 |
| 01/04/2023 | | PROCEEDING TO BE HELD IN-PERSON |
| 01/03/2023 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 01/03/2023 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/27/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/27/2022 | NTC | NOTICE FILED OF FILING APP FOR LEAVE TO APPEAL/DFT |
| 12/27/2022 | MPR | MOTION PRAECIPE FILED FOR 01042023 JUDGE 11 |
| 12/27/2022 | MPR | MOTION PRAECIPE FILED FOR 01042023 JUDGE 11 |
| 12/26/2022 | MTN | MOTION FILED FOR ORDER ALLOWING SERVICE/NOH/DFT |
| 12/26/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/26/2022 | MTN | MOTION FILED TO VACATE OSC/EXHIBIT/NOH/DFT |
| 12/22/2022 | MPR | MOTION PRAECIPE FILED FOR 01042023 JUDGE 11 |
| 12/22/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/22/2022 | MTN | MOTION FILED TO QUASH/BRF/NOH/EXHITBITS/DFT |
| 12/19/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/19/2022 | ORD | ORDER FILED ALLOW COUNSEL TO W/D |
| 12/16/2022 | APR | DATE SET FOR SHW CS HRG ON 01172023 08 30 AM Y 11 |
| 12/16/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 12/16/2022 | OSC | ORDER SHOW CAUSE FILED |
| 12/15/2022 | PTH | PRE-TRIAL HELD ON RECORD |
| 12/15/2022 | DM | DEFENSE MOTION ATTY LOFTIN WITHDRAW - GRANTED |
| 12/15/2022 | DM | DEFENSE MOTION REQUEST FOR GINTHER HRG - DENIED |
| 12/15/2022 | OTH | SHOW CAUSE |
| 12/14/2022 | MPR | MOTION PRAECIPE FILED FOR 12212022 JUDGE 11 |
| 12/13/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/13/2022 | MTN | MOTION FILED TO QUASH/RELEASE DFT/NOH/BRF/EXHBTS/DFT |
| 12/12/2022 | ORD | ORDER FILED COA |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 12/08/2022 | TRN | TRANSCRIPT FILED MTN HRG 06/23/21 |
| 12/08/2022 | TRN | TRANSCRIPT FILED MTN HRG 07/13/22 |
| 12/08/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/08/2022 | NTC | NOTICE FILED OF FILING TRN |
| 12/07/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 11/30/2022 | ORD | ORDER FILED GRANT MTN TO EXCLUDE EVID |
| 11/30/2022 | OTH | ZOOM VIDEO APPEARANCE |
| 11/30/2022 | M | MOTION EXCLUDE - GRANTED |
| 11/30/2022 | JNA | JUDGE NOT AVAILABLE CONTD TRIAL |
| 11/30/2022 | APJ | ADJ-JUDGE 12092022 TO 01172023 BY NOTICE |
| 11/30/2022 | APR | DATE SET FOR TRIAL ON 01172023 08 30 AM Y 11 |
| 11/30/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 11/29/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 11/28/2022 | BRF | BRIEF FILED IN OPP MTN TO EXCLUDE EVID/DFT |
| 11/28/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 11/28/2022 | ANS | ANSWER FILED TO MTN EXCLUDE EVID/DFT |
| 11/22/2022 | BRF | BRIEF FILED IN SUPPT OF MTN EXCLUDE EVID/PLF |
| 11/22/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 11/22/2022 | MTN | MOTION FILED EXCLUDE EVID/NOH/PLF |
| 11/22/2022 | MPR | MOTION PRAECIPE FILED FOR 11302022 JUDGE 11 |
| 11/21/2022 | OTH | DEMAND FOR DISCOVERY/PLF FILED |
| 11/21/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 11/18/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 11/17/2022 | PTH | PRE-TRIAL HELD ON RECORD |
| 11/17/2022 | OTH | CALLED WITH 2020-274748-FC |
| 11/17/2022 | OTH | CONTINUE TO TRIAL |
| 09/20/2022 | LCA | LETTER FILED FROM CRT ADMIN |
| 09/01/2022 | PTH | PRE-TRIAL HELD ON RECORD |
| 09/01/2022 | APR | DATE SET FOR PRETRIAL ON 11172022 01 00 PM Y 11 |
| 09/01/2022 | | PROCEEDING TO BE HELD IN-PERSON |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 09/01/2022 | APR | DATE SET FOR TRIAL ON 12092022 08 30 AM Y 11 |
| 09/01/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 08/18/2022 | SC | SETTLEMENT CONFERENCE / STATUS CONFERENCE HELD ON RECORD |
| 08/18/2022 | APR | DATE SET FOR PRETRIAL ON 09012022 01 00 PM Y 11 |
| 08/18/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 08/16/2022 | SE | SCHEDULING ERROR |
| 08/16/2022 | APJ | ADJ-JUDGE 09012022 TO 08182022 BY NOTICE |
| 08/16/2022 | APR | DATE SET FOR PRETRIAL ON 08182022 10 00 AM Y 11 |
| 08/16/2022 | | PROCEEDING TO BE HELD REMOTELY BY ZOOM |
| 08/16/2022 | LCA | LETTER FILED FROM CRT ADMIN |
| 08/12/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 08/10/2022 | APR | DATE SET FOR PRETRIAL ON 09012022 01 00 PM Y 11 |
| 08/10/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 08/09/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 07/13/2022 | OTH | ZOOM VIDEO APPEARANCE |
| 07/13/2022 | DM | DEFENSE MOTION FOR BOND REDUCTION DENIED |
| 07/08/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 07/08/2022 | PRF | PEOPLES RESP FILED TO MTN FOR BOND REDUCTION |
| 07/06/2022 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 07/06/2022 | APC | ADJ-COUNSEL 07072022 TO 07132022 BY NOTICE |
| 07/06/2022 | APR | DATE SET FOR PRETRIAL ON 07132022 09 00 AM Y 11 |
| 07/06/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 07/06/2022 | MPR | MOTION PRAECIPE FILED FOR 07132022 JUDGE 11 |
| 07/06/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 07/06/2022 | MTN | MOTION FILED BOND REDUCTION/DFT |
| 06/13/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 06/09/2022 | OTH | ZOOM VIDEO APPEARANCE |
| 06/09/2022 | OTH | ADJ ON RECORD |
| 06/09/2022 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 06/09/2022 | APC | ADJ-COUNSEL 06092022 TO 07072022 |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 06/09/2022 | APR | DATE SET FOR PRETRIAL ON 07072022 01 00 PM Y 11 |
| 06/09/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 05/20/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 05/20/2022 | ORD | ORDER FILED ALLOWING COUNSEL TO W/D |
| 05/19/2022 | OTH | ZOOM VIDEO APPEARANCE |
| 05/19/2022 | PTH | PRE-TRIAL HELD ON RECORD |
| 05/19/2022 | DM | DEFENSE MOTION TO WITHDRAW GRANTED |
| 05/19/2022 | APR | DATE SET FOR PRETRIAL ON 06092022 01 00 PM Y 11 |
| 05/19/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 05/19/2022 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 05/19/2022 | APC | ADJ-COUNSEL 06202022 TO 09122022 |
| 05/19/2022 | APR | DATE SET FOR TRIAL ON 09122022 08 30 AM Y 11 |
| 05/19/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 05/12/2022 | JNA | JUDGE NOT AVAILABLE |
| 05/12/2022 | APJ | ADJ-JUDGE 05122022 TO 05192022 BY NOTICE |
| 05/12/2022 | APR | DATE SET FOR PRETRIAL ON 05192022 01 00 PM Y 11 |
| 05/12/2022 | | PROCEEDING TO BE HELD IN-PERSON |
| 05/06/2022 | APR | DATE SET FOR PRETRIAL ON 05122022 01 00 PM Y 11 |
| 05/06/2022 | | PROCEEDING TO BE HELD REMOTELY BY ZOOM |
| 04/21/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 03/24/2022 | OTH | ZOOM VIDEO APPEARANCE |
| 03/24/2022 | PTH | PRE-TRIAL HELD ON RECORD |
| 03/24/2022 | OTH | CONT TO TRIAL |
| 03/21/2022 | APR | DATE SET FOR PRETRIAL ON 03242022 01 00 PM Y 11 |
| 03/18/2022 | PEX | PEOPLES EXHIBIT NO.1 FILED |
| 03/18/2022 | MPS | MIFILE PROOF OF SERVICE FILED |
| 03/07/2022 | JNA | JUDGE NOT AVAILABLE |
| 03/07/2022 | APJ | ADJ-JUDGE 05092022 TO 06202022 BY ORDER |
| 03/07/2022 | APR | DATE SET FOR TRIAL ON 06202022 08 30 AM Y 11 |
| 03/07/2022 | ADJ | ORDER OF ADJOURNMENT FILED TRIAL |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

Court Explorer - Oakland County, Michigan

| Date | Code | Desc |
|------|------|------|
| 03/01/2022 | JNA | JUDGE NOT AVAILABLE COVID 19 OPS |
| 03/01/2022 | APJ | ADJ-JUDGE 05092022 TO 05092022 BY NOTICE |
| 03/01/2022 | APR | DATE SET FOR TRIAL ON 05092022 08 30 AM Y 11 |
| 03/01/2022 | ADJ | ORDER OF ADJOURNMENT FILED TRIAL |
| 01/27/2022 | OTH | ZOOM VIDEO APPEARANCE |
| 01/27/2022 | PTH | PRE-TRIAL HELD ON RECORD |
| 01/27/2022 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 01/27/2022 | APC | ADJ-COUNSEL 03012022 TO 05092022 |
| 01/27/2022 | APR | DATE SET FOR TRIAL ON 05092022 08 30 AM Y 11 |
| 01/25/2022 | GIF | GEN INFO FILED 3RD AMD |
| 01/25/2022 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 01/20/2022 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 01/20/2022 | APC | ADJ-COUNSEL 02102022 TO 01272022 BY NOTICE |
| 01/20/2022 | APR | DATE SET FOR PRETRIAL ON 01272022 01 00 PM Y 11 |
| 12/17/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/17/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 12/16/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 12/16/2021 | OTH | ADJ ON RECORD |
| 12/16/2021 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 12/16/2021 | APC | ADJ-COUNSEL 12162021 TO 02102022 |
| 12/16/2021 | APR | DATE SET FOR PRETRIAL ON 02102022 01 00 PM Y 11 |
| 12/16/2021 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 12/16/2021 | APC | ADJ-COUNSEL 01212022 TO 03012022 |
| 12/16/2021 | APR | DATE SET FOR TRIAL ON 03012022 08 30 AM Y 11 |
| 12/09/2021 | CAA | ORDER COURT APPOINTED ATTORNEY FILED SUB |
| 12/03/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 12/03/2021 | MTN | MOTION FILED W/DRAW ATTY |
| 12/02/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 12/02/2021 | PTH | PRE-TRIAL HELD ON RECORD |
| 12/02/2021 | APR | DATE SET FOR PRETRIAL ON 12162021 01 00 PM Y 11 |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 11/22/2021 | ORD | ORDER FILED FINAL/TRIAL |
| 11/19/2021 | APR | DATE SET FOR PRETRIAL ON 12022021 02 00 PM Y 11 |
| 09/14/2021 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 09/14/2021 | APC | ADJ-COUNSEL 09202021 TO 01112022 BY NOTICE |
| 09/14/2021 | APR | DATE SET FOR TRIAL ON 01112022 08 30 AM Y 11 |
| 09/14/2021 | JNA | JUDGE NOT AVAILABLE |
| 09/14/2021 | APJ | ADJ-JUDGE 01112022 TO 01212022 BY NOTICE |
| 09/14/2021 | APR | DATE SET FOR TRIAL ON 01212022 08 30 AM Y 11 |
| 08/19/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 08/19/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 08/19/2021 | PTH | PRE-TRIAL HELD ON RECORD |
| 08/19/2021 | APR | DATE SET FOR TRIAL ON 01112022 08 30 AM Y 11 |
| 07/21/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 07/21/2021 | M | MOTION IN LIMINE GRANTED |
| 07/21/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 07/21/2021 | ORD | ORDER FILED GRANT MTN IN LIMINE |
| 07/19/2021 | BRF | BRIEF FILED IN SUPT OF RESP TO MTN ADMIT VIDEO AT TRL |
| 07/19/2021 | RES | RESPONSE FILED TO MTN TO ADMIT VIDEO/PHOTO AT TRL |
| 07/19/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 07/08/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 07/08/2021 | PTH | PRE-TRIAL HELD ON RECORD |
| 07/08/2021 | APR | DATE SET FOR PRETRIAL ON 08192021 01 00 PM Y 11 |
| 07/08/2021 | APR | DATE SET FOR TRIAL ON 09202021 08 30 AM Y 11 |
| 06/30/2021 | MPR | MOTION PRAECIPE FILED FOR 07212021 JUDGE 11 |
| 06/30/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 06/30/2021 | BRF | BRIEF FILED IN SUPT OF MTN TO ADMIT VIDEOS/PHOTOS |
| 06/30/2021 | MTN | MOTION FILED TO ADMIT VIDEOS/PHOTOS AT TRL |
| 06/30/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 06/23/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 06/23/2021 | ORD | ORDER FILED DENY MTN TO AMEND BOND |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 06/18/2021 | PRF | PEOPLES RESP FILED TO MTN TO REDUCE BOND |
| 06/18/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 06/14/2021 | MPR | MOTION PRAECIPE FILED FOR 06232021 JUDGE 11 |
| 06/14/2021 | GIF | GEN INFO FILED 2ND AMD |
| 06/14/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 06/09/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 06/09/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 06/09/2021 | MTN | MOTION FILED TO REDUCE BOND |
| 06/08/2021 | REQ | REQUEST FILED FOR SERVICE/PLF |
| 06/03/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/24/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/20/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/13/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 05/13/2021 | SC | SETTLEMENT CONFERENCE / STATUS CONFERENCE HELD ON RECORD |
| 05/12/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/10/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/10/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/10/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/06/2021 | APR | DATE SET FOR STAT CONF ON 05132021 11 30 AM Y 11 |
| 04/28/2021 | GIF | GEN INFO FILED 1ST AMD |
| 04/28/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 04/27/2021 | NTC | NOTICE FILED OF INTENT TO ADMIT EXPERT TESTIMONY |
| 03/26/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 03/24/2021 | STO | STIP/ORD FILED SUB ATTY |
| 03/18/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 03/02/2021 | APR | DATE SET FOR TRIAL ON 07082021 08 30 AM Y 11 |
| 02/26/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 02/26/2021 | OTH | DEMAND FOR DISCOVERY FILED |
| 02/26/2021 | OTH | ZOOM VIDEO APPEARANCE |
| 02/26/2021 | OTH | DEF WAIVED IN-PERSON APPEARANCE |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 02/26/2021 | PTH | PRE-TRIAL HELD ON RECORD |
| 01/26/2021 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 01/26/2021 | APC | ADJ-COUNSEL 02122021 TO 02262021 BY ORDER |
| 01/26/2021 | APR | DATE SET FOR PRETRIAL ON 02262021 10 00 AM Y 11 |
| 01/26/2021 | ADJ | ORDER OF ADJOURNMENT FILED STP/PRETRIAL |
| 01/19/2021 | MPS | MIFILE PROOF OF SERVICE FILED |
| 01/04/2021 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 01/02/2021 | OJR | CASE REASSIGNED FROM JUDGE JARBOU TO JUDGE POLES |
| 01/02/2021 | CPA | CHANGE OF PLAINTIFF ATTORNEY/PROSECUTOR P23242 |
| 12/11/2020 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 12/11/2020 | APC | ADJ-COUNSEL 12102020 TO 02122021 |
| 12/11/2020 | APR | DATE SET FOR PRETRIAL ON 02122021 08 30 AM Y 11 |
| 12/10/2020 | OTH | ZOOM VIDEO APPEARANCE |
| 12/10/2020 | OTH | DEF WAIVED IN-PESRON APPEARANCE |
| 12/10/2020 | OTH | ADJ ON RECORD |
| 10/13/2020 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 10/12/2020 | AID | ADJOURN FOR INVESTIGATION/DISCOVERY |
| 10/12/2020 | APC | ADJ-COUNSEL 10082020 TO 12102020 |
| 10/12/2020 | APR | DATE SET FOR VOP ON 12102020 01 00 PM Y 11 |
| 10/08/2020 | OTH | ZOOM VIDEO APPEARANCE |
| 10/08/2020 | OTH | DEF WAIVED PRESENCE |
| 10/08/2020 | OTH | ADJ ON RECORD |
| 09/02/2020 | TRN | TRANSCRIPT FILED PRELIM 07/24/20 |
| 08/27/2020 | OTH | DEFT WAIVED IN-PERSON APPEARANCE |
| 08/27/2020 | PTH | PRE-TRIAL HELD ON THE RECORD |
| 08/27/2020 | OTH | ZOOM VIDEO APPEARANCE |
| 08/27/2020 | APR | DATE SET FOR PRETRIAL ON 10082020 01 00 PM Y 11 |
| 08/24/2020 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 08/07/2020 | APR | DATE SET FOR PRETRIAL ON 08272020 01 00 PM Y 11 |
| 08/06/2020 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|------|------|------|
| 08/06/2020 | ARR | ARRAIGNMENT IN COURT |
| 08/06/2020 | OTH | DEFT WAIVED IN-PERSON APPEARANCE |
| 08/06/2020 | OTH | ZOOM VIDEO APPEARANCE |
| 08/05/2020 | GIF | GEN INFO FILED |
| 07/30/2020 | NAJ | NOTICE TO ASSIGN JUDGE FILED |
| 07/28/2020 | DCR | DISTRICT COURT RETURN FILED |
| 07/28/2020 | N | NTC CT ADMN FILED |
| 07/24/2020 | N | NOTICE FROM COURT ADMINISTRATOR FILED |
| 07/24/2020 | A | PROSECUTORS ORDER 20-72950 |
| 07/24/2020 |  | ARRESTING AGENCY: WATERFORD TWP. POLICE DEPT. |
| 07/24/2020 |  | 51 DISTRICT COURT 201084FY |
| 07/24/2020 | CTN | CENTRAL TRACT 63-20-072950-01 |
| 07/24/2020 | SID | STATE ID NOT AVAILABLE |
| 07/24/2020 | DOF | DATE OF OFFENSE 03/18/20 |
| 07/24/2020 | CCA | ARRAIGNMENT - THU, 08062020 AT 0100PM |
| 07/24/2020 | DCX | EXAM FOR 07/24/20 HAD |
| 07/24/2020 | DOB | BIRTH YEAR - 01 |
| 07/24/2020 | CHG | 750.83 ASS'LT W/I MURD |
| 07/24/2020 |  | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.227B-A WEAPONS-FELONY FIREARM |
| 07/24/2020 |  | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.83 ASS'LT W/I MURD |
| 07/24/2020 |  | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.227B-A WEAPONS-FELONY FIREARM |
| 07/24/2020 |  | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.234B DISCH.FIREARM IN OR AT BLDG. |
| 07/24/2020 |  | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.227B-A WEAPONS-FELONY FIREARM |
| 07/24/2020 |  | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.377A1C1 MAL DES PERS PROP 200.><1000. |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

| Date | Code | Desc |
|---|---|---|
| 07/24/2020 | | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.227B-A WEAPONS-FELONY FIREARM |
| 07/24/2020 | | CHARGE DISMISSED |
| 07/24/2020 | CHG | 750.377A1B1 MDOP $1,000 TO $20,000 |
| 07/24/2020 | | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.227B-A WEAPONS-FELONY FIREARM |
| 07/24/2020 | | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.377A1B1 MDOP $1,000 TO $20,000 |
| 07/24/2020 | | BOUND OVER AS CHARGED |
| 07/24/2020 | CHG | 750.227B-A WEAPONS-FELONY FIREARM |
| 07/24/2020 | | BOUND OVER AS CHARGED |
| 07/24/2020 | COB | CONDITIONS ON BOND |
| 07/24/2020 | BON | BOND POSTED BY: NOT FURNISHED |
| 07/24/2020 | | CITY UNKNOWN |
| 07/24/2020 | | TYPE: CASH/SURETY |
| 07/24/2020 | | AMOUNT: $200,000 |
| 07/24/2020 | BON | BOND POSTED BY: NOT FURNISHED |
| 07/24/2020 | | CITY UNKNOWN |
| 07/24/2020 | | TYPE: CASH/SURETY |
| 07/24/2020 | | AMOUNT: $100,000 |
| 07/24/2020 | BON | BOND POSTED BY: NOT FURNISHED |
| 07/24/2020 | | CITY UNKNOWN |
| 07/24/2020 | | TYPE: CASH/SURETY |
| 07/24/2020 | | AMOUNT: $200,000 |
| 07/24/2020 | BON | BOND POSTED BY: NOT FURNISHED |
| 07/24/2020 | | CITY UNKNOWN |
| 07/24/2020 | | TYPE: CASH/SURETY |
| 07/24/2020 | | AMOUNT: $50,000 |
| 07/24/2020 | APR | DATE SET FOR ARRAIGNMEN ON 08062020 01 00 PM Y |

RECEIVED by MCOA 2/2/2023 12:35:06 PM

RECEIVED by MCOA 2/2/2023 12:35:06 PM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

EXHIBIT 2

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v                                        CR     20-274746-FC

                                               HON.  YASMINE I. POLES

RAUL CONTRERAS,

        Defendant.

_____/

KAREN D. McDONALD (P 59083)
OAKLAND COUNTY PROSECUTING ATTORNEY
1200 NORTH TELEGRAPH
PONTIAC, MI 48341
_____/

**<u>ORDER TO SHOW CAUSE</u>**

     Scott Witzke having prepared and filed pleadings in this case while engaging in the unauthorized practice of law pursuant to MCL 600.916;

     IT IS THEREFORE ORDERED that Scott Witzke appear before this Court on January 17, 2023 at 8:30 AM to then and there show cause, if any, why Scott Witzke should not be held in Contempt of Court.

     IT IS FURTHER ORDERED that a copy of this order be sent to Scott Witzke at 330 N. Saginaw, Pontiac, MI 48342 by certified mail.  Such mail shall be deemed proper service in this matter.

/s/YASMINE I. POLES
_____
CIRCUIT COURT JUDGE

DATE: 12/16/2022
_____

CAB-22/Contreras-R (Order to Show Cause).docx

FILED   Received for Filing   Oakland County Clerk   12/16/2022 3:38 PM

RECEIVED by MCOA 2/2/2023 12:35:06 PM

EXHIBIT 3

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

**PEOPLE OF THE STATE OF MICHIGAN,**
        **Plaintiff,**

**v.**                                                                    **Case No. 20-274746-FC**
                                                                         **Hon. Yasmine I. Poles**

**RAUL CONTRERAS,**
        **Defendant.**
_____/

**ORDER RE: MOTION TO VACATE**

        This matter is before the Court on Respondent Scott Witzke's Motion to Vacate December 16, 2022 Order to Show Cause. Oral argument having been heard on January 4, 2023, and the Court being fully advised in the premises,

        IT IS HEREBY ORDERED that Scott Witzke's motion to vacate the Order to Show Cause is GRANTED for the reasons stated on the record.

        IT IS FURTHER ORDERED that Scott Witzke is prohibited from drafting and/or filing motions or other pleadings in conjunction with or on behalf of Raul Contreras in the instant case. Further, Scott Witzke is prohibited from otherwise interfering with or engaging in the unauthorized practice of law in the instant case.

        IT IS FURTHER ORDERED that Scott Witzke (witzkeparalaw@gmail.com and scottawitzke@gmail.com) shall be removed from the OnBase service contact list.

        **IT IS SO ORDERED.**

  1/5/2023                                              /S/YASMINE I. POLES
_____                    _____
Date                                                      Hon. Yasmine I. Poles, Circuit Court Judge

FILED    Received for Filing    Oakland County Clerk    1/5/2023 9:30 AM

RECEIVED by MCOA 2/2/2023 12:35:06 PM

EXHIBIT 4

S T A T E   O F   M I C H I G A N

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN,

               Plaintiff,

v                                      CR    2020-274746-FC
                                           HON.  YASMINE POLES
RAUL CONTRERAS,

               Defendant.
_____/

KAREN D. McDONALD (P59083)
OAKLAND COUNTY PROSECUTING ATTORNEY
1200 NORTH TELEGRAPH ROAD
PONTIAC, MI 48341

FREDERICK J. MILLER (P41207)
ATTORNEY FOR DEFENDANT
P.O. BOX 349
METAMORA, MI  48455
_____/

**ORDER GRANTING THE PEOPLE'S MOTION TO PRECLUDE DEFENDANT FROM
HAVING CONTACT WITH SCOTT WITZKE**

      This matter having come before the Court on the People's Motion to Preclude Defendant From Having Contact with Scott Witzke, and oral argument having been heard; IT IS HEREBY ORDERED that the People's Motion is GRANTED. Defendant is to have no contact with Scott Witzke, either direct or through a third party.

_____
Cynthia A. Brown (P 57863)
Assistant Prosecuting Attorney

_____
Frederick J. Miller (P41207)
Attorney for Defendant

DATE: _1/26/2023_____

_____
HON. YASMINE I. POLES
CIRCUIT COURT JUDGE

                                   mz

S T A T E   O F   M I C H I G A N

IN THE COURT OF APPEALS

IN RE SCOTT ANDREW WITZKE,

        Petitioner,

Oakland County Circuit Court
No. 2020-274746-FC

COA No. _____

_____/

**SCOTT ANDREW WITZKE**
Petitioner, *in pro per*
336 N. Saginaw Street
Pontiac, MI 48342
Telephone: (734) 496-5895
Facsimile: (734) 823-1325
Email: scottawitzke@gmail.com

**KAREN D. McDONALD (P59083)**
**OAKLAND COUNTY PROSECUTOR**
1200 N. Telegraph Rd.
Pontiac, MI 48341
Telephone: (248) 858-0656
Facsimile: (248) 452-2208
Email: vidac@oakgov.com

**HONORABLE YASMINE I. POLES**
Circuit Judge
6th Judicial Circuit Court
1200 N. Telegraph Rd., Department 404
Pontiac, MI 48341-0404
Telephone: (248) 452-2002
Email: polesy@oakgov.com

**FREDERICK J. MILLER (P41207)**
Attorney for Defendant Raul Contreras
P.O. Box 349
Metamora, MI 48455
Telephone: (248) 628-0180
Facsimile: (810) 660-7202
Email: fjmp41207@yahoo.com

_____/

**<u>BRIEF IN SUPPORT OF COMPLAINT</u>**
**<u>FOR WRIT OF SUPERINTENDING CONTROL</u>**

RECEIVED by MCOA 2/2/2023 12:35:06 PM

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………...iii

STATEMENT OF JURISDICTION …………………………………………….v

STATEMENT OF QUESTION PRESENTED …………………………………vi

STATEMENT OF FACTS ……………………………………………………1

ARGUMENT …………………………………………………………………4

    **I. THE ORDER ENTERED BY THE TRIAL COURT ON JANUARY 26, 2023, EXCEEDED ITS JURISDICTION AND VIOLATES PETITIONER'S FIRST AMENDMENT RIGHT TO COMMUNICATE WITH DEFENDANT RAUL CONTRERAS WHILE HE IS BEING DETAINED AT THE OAKLAND COUNTY JAIL, AND THE ORDER WAS ENTERED WITHOUT PETITIONER HAVING BEEN PROVIDED WITH DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT.**

    **A. APPLICABLE LEGAL STANDARDS** ……………………………4

    **B. THE TRIAL COURT EXCEEDED ITS JURISDICTION AND DID NOT PROCEED ACCORDING TO LAW, WHICH HAS VIOLATED PETITIONER'S FIRST AND FOURTEENTH AMENDMENT RIGHTS** ……………………………………………5

CONCLUSION ………………………………………………………...10

RECEIVED by MCOA 2/2/2023 12:35:06 PM

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                          <u>PAGE</u>

*Cornelius v NAACP Legal Def & Educ Fund, Inc*, 473 US 788;
105 S Ct 3439; 87 L Ed 2d 567 (1985) …………………………………………7, 8

*Davison v Loudoun Cty Bd of Supervisors*, 267 F Supp 3d 702, 716
(ED Va 2017), aff'd sub nom *Davison v Randa*ll, 912 F3d
666 (4th Cir 2019) …………………………………………………………..7, 8

*In re Fredericks*, 285 Mich 262; 280 NW2d 464 (1938) ………………………4, 10

*Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672;
194 NW2d 693 (1972) …………………………………………………………4, 10

*In re Contempt of Henry*, 282 Mich App 656, 669;
765 NW2d 44 (2009) …………………………………………………………5

*Human Rights Def Ctr v Livingston Cnty*, 2016 US Dist LEXIS 43164
(ED Mich Mar 31, 2016) …………………………………………………...9

*Johnson v Galli*, 596 F Supp 135 (D Nev 1984) ……………………………………8

*Kleindienst v Mandel*, 408 US 753; 92 S Ct 2576;
33 L Ed 2d 683 (1972) …………………………………………………...7

*Lamont v Postmaster General*, 381 US 301; 85 S Ct 1493;
14 L Ed 398 (1965) …………………………………………………………6, 7

*Martin v City of Struthers*, 319 US 141, 143; 63 S Ct 862;
87 L Ed 1313 (1943) …………………………………………………………7

*Morgan v LaVallee*, 526 F2d 221 (2d Cir 1975) ……………………………………8

*People v Burton*, 429 Mich. 133; 413 NW2d 413 (1987) …………………………4

iii

RECEIVED by MCOA 2/2/2023 12:35:06 PM

*Procunier v Martinez*, 416 US 396; 94 S Ct 1800;
40 L Ed 2d 224 (1974) …………………………………………………...6, 7, 9

*Reno v ACLU*, 521 US 844; 117 S Ct 2329; 138 L Ed 2d 874 (1997) ……………7

*Thornburgh v Abbott*, 490 U.S. 401; 109 S Ct 1874;
104 L Ed 2d 459 (1989) …………………………………………………7, 8

*Turner v Safley*, 482 US 78; 107 S Ct 2254; 96 L Ed 2d 64 (1987) ………………8

*Washington v Reno*, 35 F3d 1093 (6th Cir 1994) ……………………………………8

## CONSTITUTIONAL PROVISIONS, RULES, AND BOOKS

Const 1963, art 1, § 20 ………………………………………………..5

US Const, Amend I …………………………………………………*passim*

US Const, Amend XIV …………………………………………………*passim*

MCR 3.302(C) …………………………………………………..4

MCR 3.606(A) …………………………………………………...1, 2, 5

MCR 7.203(C) …………………………………………………..4

MCR 7.205(A) …………………………………………………..5

*Contempt of Court Benchbook* (5th Ed 2022) ……………………………………5

RECEIVED by MCOA 2/2/2023 12:35:06 PM

## **STATEMENT OF JURISDICTION**

This Honorable Court has jurisdiction to entertain and grant writs of superintending control to inferior courts.  MCR 7.203(C)(1).

RECEIVED by MCOA 2/2/2023 12:35:06 PM

## <u>STATEMENT OF QUESTION PRESENTED</u>

I. WHETHER (1) THE ORDER ENTERED BY THE TRIAL COURT ON JANUARY 26, 2023, EXCEEDED ITS JURISDICTION AND VIOLATES PETITIONER'S FIRST AMENDMENT RIGHT TO COMMUNICATE WITH DEFENDANT RAUL CONTRERAS WHILE HE IS BEING DETAINED AT THE OAKLAND COUNTY JAIL, AND (2) THE ORDER WAS ENTERED WITHOUT PETITIONER HAVING BEEN PROVIDED WITH DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT?

**Petitioner Answers "Yes"**

**Respondent Answers "No"**

RECEIVED by MCOA 2/2/2023 12:35:06 PM

## I.  <u>STATEMENT OF FACTS</u>

All of the Statement of Facts are taken directly from the Complaint filed in this action, at ¶¶ 2-9.

The parties to the criminal action in the circuit court are:

- The People of the State of Michigan who is represented by the Oakland County Prosecutor;

- Raul Contreras who is the defendant and is represented by attorney Frederick J. Miller; and

- Honorable Yasmine I. Poles (P67672) is the assigned circuit court judge in *People of the State of Michigan v Raul Contreras*, Oakland County Circuit Court Docket #2020-274746-FC, and Judge Poles is the Respondent herein.  (Ex 1, attached to Complaint, Oakland County Circuit Court ROA.)

On or about December 16, 2022, Judge Poles, in the Contreras case, acting *ex parte* and in non-compliance with the provisions of MCR 3.606(A) by any of the parties, entered an Order to Show Cause which directed Petitioner to appear before Judge Poles and show cause, "if any," why he should not be held in contempt of Court.  (*See* Ex 2, attached to Complaint.)

1

RECEIVED by MCOA 2/2/2023 12:35:06 PM

On or about December 26, 2022, Petitioner filed in the Contreras case a Motion to Vacate Order to Show Cause premised upon the failure of both the parties and Judge Poles from complying with the provisions of MCR 3.606(A).

On or about January 5, 2023, Judge Poles entered an Order Re: Motion to Vacate, which purported to grant Petitioner's Motion to Vacate Order to Show Cause (but which, nevertheless, prohibited Petitioner from certain conduct under the guise of Petitioner purportedly engaging in the unauthorized practice of law, such conduct being prohibited by Judge Poles' Order without any "evidence" having properly been taken to make said determination).  (*See* Ex 3, attached to Complaint.)

On or about January 26, 2023, at a pretrial proceeding held in the Contreras case (at which Petitioner was present in the courtroom), Judge Poles heard an oral motion brought by Assistant Prosecuting Attorney Jeffrey M. Kaelin (P51249) which requested that Defendant Raul Contreras be prohibited from making or attempting to make any contact with Petitioner directly or through third parties.

During the "hearing" on the People's oral motion, Judge Poles expressly refused to permit Petitioner or Defendant Contreras from responding to the spurious allegations of the Assistant Prosecuting Attorney and, in fact, Judge Poles made an inappropriate statement (*i.e.*, to the effect that Petitioner should have appeared at a non-existent show cause hearing) and, in addition, Judge Poles threatened to (1) hold Petitioner in "contempt" for merely attempting to be heard in opposition to the

2

RECEIVED by MCOA 2/2/2023 12:35:06 PM

factual assertions made by Assistant Prosecuting Attorney Kaelin, and (2) prohibit Defendant Contreras from having any outside communications with others while detained at the Oakland County Jail if he made attempts to contact Petitioner.

On or about January 26, 2023, Judge Poles entered an "Order Granting the People's Motion to Preclude Defendant from Having Contact with Scott Witzke," and said Order states that Defendant Contreras "is to have no contact with Scott Witzke, either direct or through a third party." (*See* Ex 4, attached to Complaint.)

Prior to the circuit court's entry of the January 26, 2023, Order, neither Petitioner nor Defendant Raul Contreras has either been accused of violating any penal laws or been adjudged guilty of contempt of court for violating any Order of the circuit court.

Petitioner has no legal recourse through the State's appellate review system to seek review of the January 26, 2023, Order of Judge Poles because Petitioner is not a party to the action in which said Order was entered and Petitioner himself is directly not prohibited from doing anything.

RECEIVED by MCOA 2/2/2023 12:35:06 PM

## II.   **ARGUMENT**

**THE ORDER ENTERED BY THE TRIAL COURT ON JANUARY 26, 2023, EXCEEDED ITS JURISDICTION AND VIOLATES PETITIONER'S FIRST AMENDMENT RIGHT TO COMMUNICATE WITH DEFENDANT RAUL CONTRERAS WHILE HE IS BEING DETAINED AT THE OAKLAND COUNTY JAIL, AND THE ORDER WAS ENTERED WITHOUT PETITIONER HAVING BEEN PROVIDED WITH DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT.**

### A.

### APPLICABLE LEGAL STANDARDS

As our Supreme Court has explained:

> In exercising the power of superintending control over a lower court, a reviewing court is invoking an extraordinary power. Under its constitutional power, this Court adopted MCR 7.203(C) which provides the jurisdiction of the Court of Appeals for extraordinary writs, original actions, and enforcement actions. MCR 7.203(C)(1) provides that the Court may entertain an action for "superintending control over a lower court or a tribunal immediately below it arising out of an action or proceeding which, when concluded, would result in an order appealable to the Court of Appeals." MCR 3.302(C) provides that superintending control is to be used in place of the former writs of certiorari, mandamus, and prohibition. An order of superintending control, comparable to a writ of certiorari, traditionally has been used only to determine "if the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law." *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672; 194 NW2d 693 (1972), quoting *In re Fredericks*, 285 Mich 262; 280 NW2d 464 (1938). The review in such a case is limited only to questions of law. [*People v Burton*, 429 Mich. 133, 139; 413 NW2d 413 (1987) (footnote omitted)]

RECEIVED by MCOA 2/2/2023 12:35:06 PM

4

There is no question that this Court, upon completion of the proceedings below (which the trial court unquestionably has jurisdiction over), will have jurisdiction over any final judgment of conviction in the criminal case that is pending in the circuit court, either by right to appeal or by application for leave to appeal.  Const 1963, art 1, § 20; MCR 7.205(A)(2).

## B.

### THE TRIAL COURT EXCEEDED ITS JURISDICTION AND DID NOT PROCEED ACCORDING TO LAW, WHICH HAS VIOLATED PETITIONER'S FIRST AND FOURTEENTH AMENDMENT RIGHTS

At the outset, there was some attempt via Order to Show Cause issued on December 16, 2022, to hold Petitioner in purported "contempt" of the circuit court. In response to that Order to Show Cause, Petitioner promptly moved to vacate the Order on grounds that neither the parties nor the trial judge complied with the procedural requirements of MCR 3.606(A).  *See In re Contempt of Henry*, 282 Mich App 656, 669; 765 NW2d 44 (2009); *see also* Ch 3, *Contempt of Court Benchbook* (5th Ed 2022) (outlining "procedural requirements" for contempt proceedings).

On January 4, 2023, the trial court heard Petitioner's Motion to Vacate and, on the record, *granted* the motion.  The next day, January 5, 2023, the trial court entered the Order Re: Motion to Vacate, which purported to grant Petitioner's Motion to Vacate Order to Show Cause (but which, nevertheless, prohibits Petitioner

RECEIVED by MCOA 2/2/2023 12:35:06 PM

from certain conduct under the guise of Petitioner purportedly engaging in the unauthorized practice of law).

On or about January 26, 2023, an Oakland County assistant prosecuting attorney made an oral motion in the trial court which requested that Defendant Raul Contreras be prohibited from making or attempting to make any contact with Petitioner directly or through third parties. That oral motion alluded to some purported violations between Defendant Contreras and Witzke of the trial court's Order entered on January 5, 2023. Witzke was not provided with opportunity to be heard on the issue.[1] The trial court proceeded to grant the People's oral motion and subsequently entered a written Order on the same date which states, in pertinent part, the following: "Defendant is to have no contact with Scott Witzke, either direct or through a third party." (Ex 4, attached to Complaint.)

The United States Supreme Court long ago observed:

Whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech. And this does not depend on whether the nonprisoner correspondent is the author or intended recipient of a particular letter, for the addressee as well as the sender of direct personal correspondence derives from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communication. *Lamont v Postmaster*

---

[1] Newly appointed counsel for Defendant Contreras essentially concurred with the motion made by the People. Upon information and belief, defense counsel did *not* discuss the issue with Defendant Contreras and obtain his assent to concur with the relief sought by the People, and an attorney who is appointed for the defense of a criminal charge certainly cannot extend his consent to orders which may issue regarding a detainee's ("client" or not) communications or which affect Petitioner's freedoms to communicate with a detainee.

RECEIVED by MCOA 2/2/2023 12:35:06 PM

*General*, 381 US 301; 85 S Ct 1493; 14 L Ed 398 (1965); accord, *Kleindienst v Mandel*, 408 US 753, 762-765; 92 S Ct 2576; 33 L Ed 2d 683 (1972); *Martin v City of Struthers*, 319 US 141, 143; 63 S Ct 862; 87 L Ed 1313 (1943). We do not deal here with difficult questions of the so-called "right to hear" and third-party standing but with a particular means of communication in which the interests of both parties are inextricably meshed. The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him. In either event, censorship of prisoner mail works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners. [*Procunier v Martinez*, 416 US 396, 410; 94 S Ct 1800; 40 L Ed 2d 224 (1974) (cleaned up), overruled on other grds *Thornburgh v Abbott*, 490 U.S. 401; 109 S Ct 1874; 104 L Ed 2d 459 (1989)]

Since *Procunier* was decided, forms of communications have progressed in our world today. People in free society frequently receive telephone calls from detainees, and the trend, as in Oakland County, is to permit detainees to have access to email. With respect to email, the United States Supreme Court made the following observation over 25-years ago:

E-mail enables an individual to send an electronic message—*generally akin to a note or letter*--to another individual or to a group of addressees. The message is generally stored electronically, sometimes waiting for the recipient to check her "mailbox" and sometimes making its receipt known through some type of prompt. [*Reno v ACLU*, 521 US 844, 851; 117 S Ct 2329; 138 L Ed 2d 874 (1997) (emphasis added)]

Thus, email constitutes a means of communication between detainees and members of the public, such as Petitioner, especially because Oakland County has established a platform for the public to communicate with its detainees. *See, e.g., Davison v Loudoun Cty Bd of Supervisors*, 267 F Supp 3d 702, 716 (ED Va 2017), (quoting

7

RECEIVED by MCOA 2/2/2023 12:35:06 PM

*Cornelius v NAACP Legal Def & Educ Fund, Inc*, 473 US 788, 802; 105 S Ct 3439; 87 L Ed 2d 567 (1985)), aff'd sub nom *Davison v Randa*ll, 912 F3d 666 (4th Cir 2019).

With respect to telephone calls between detainees and those free persons in society, such as Petitioner, the United States Court of Appeals for the Sixth Circuit has observed the following:

> The Supreme Court has recognized that "'prison walls do not form a barrier separating prison inmates from the protections of the Constitution,' *Turner v Safley*, 482 US 78, at 84; 107 S Ct 2254; 96 L Ed 2d 64 (1987) . . ., nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside,' *id*, at 94-99. . . ." *Thornburgh v Abbott*, 490 US 401, 407; 109 S Ct 1874; 104 L Ed 2d 459, 109 S Ct 1874 (1989). In fact, federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, *Morgan v LaVallee*, 526 F2d 221, 225 (2d Cir 1975), and have recognized that "there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Johnson v Galli*, 596 F Supp 135, 138 (D Nev 1984). [*Washington v Reno*, 35 F3d 1093, 1099-1100 (6th Cir 1994) (cleaned up)]

Thus, phone calls, too, are protected within the meaning of the First Amendment between detainees and those in the free world, such as Petitioner.

*Perhaps* if Petitioner had been adjudged in contempt of court or was properly found (after being heard) to have violated the questionable[2] prohibitions made in the

---

[2] "Questionable" because what the trial court did when it included the prohibitions within the Order amounts to an "end-run" around the explicit requirements of MCR 3.606(A).

RECEIVED by MCOA 2/2/2023 12:35:06 PM

trial court's Order of January 5, 2023, or if Petitioner and Defendant Contreras had

been accused or adjudged guilty of violating some provision of Michigan's penal

code, then the January 26, 2023, Order of the trial court could be considered valid.

This is not the situation, however.

There is little doubt that process which was due Petitioner prior to the trial

court entering its Order of January 26, 2023, fails under any set of circumstances.

Petitioner was afforded *none* and the Order clearly affects Petitioner's First

Amendment freedoms. With respect to "letters" (be it by email or traditional "snail

mail"), U.S. District Judge Denise Page Hood as explained what process is due if a

communication is rejected by jail officials:

> The Supreme Court has held that due process requires a governmental
> entity's "decision to censor or withhold delivery of a particular letter …
> be accompanied by *minimal procedural safeguards*" to be
> constitutional. *Procunier v. Martinez*, 416 US 396, 417, 94 S Ct 1800,
> 40 L Ed 2d 224 (1974) (emphasis added). The *Martinez* court
> concluded that such "minimal procedural safeguards" include: (1)
> notice must be given to the inmate to whom the rejected letter was
> addressed; (2) the author of the letter must be given a reasonable
> opportunity to object to (*i.e.,* heard with respect to) the decision to reject
> the letter; and (3) complaints concerning the rejection must be reviewed
> by someone other than the individual who originally rejected the letter.
> *Id* at 418-19. [*Human Rights Def Ctr v Livingston Cnty*, 2016 US Dist
> LEXIS 43164 *6 (ED Mich Mar 31, 2016) (Ex 1, attached hereto)]

The same rationale holds true with communications via telephone and email.

RECEIVED by MCOA 2/2/2023 12:35:06 PM

## III.   <u>CONCLUSION</u>

Although couched in terms of prohibiting Defendant Contreras from "hav[ing] no contact with Scott Witzke, either direct or through a third party[,]" the teachings of both the United States Supreme Court and the Sixth Circuit Court of Appeals of the United States are clear and unambiguous inasmuch as Petitioner, too, has a First Amendment right to "reaching out to those on the 'inside.'" *Turner v Safley*, *supra*, 482 US at 84 (quoting *Thornburgh v Abbott supra*, 490 US at 407).

The trial court concededly having jurisdiction over the criminal case which involves Defendant Contreras, nevertheless exceeded its jurisdiction in that matter by having entered the Order of January 25, 2023, without first holding any form of evidentiary hearing (or otherwise hearing Petitioner by means of argument or response) on the People's oral motion made to prohibit Defendant Contreras from having contact with Petitioner.  By not tailoring its Order after proper hearing, the trial court certainly cannot be said to have "proceeded according to law."  *Genesee Prosecutor v Genesee Circuit Judge*, *supra*, 386 Mich 672 (quoting *In re Fredericks*, *supra*, 285 Mich 262).

Respectfully submitted,

Dated at Pontiac, MI this 2nd day
of February, 2023

/s/ Scott A. Witzke
SCOTT ANDREW WITZKE
Petitioner *in pro per*

10

RECEIVED by MCOA 2/2/2023 12:35:06 PM

 


EXHIBIT 1

Lexis

Client: -None- ⌄    Folders    History    Help    More

---

Document:          Human Rights Def. Ctr. v. Livingston Cnty., 2016 U.S. Dist. LEXIS 43164          Actions ⌄

---

Go to ⌄    Page  *Page #*    Search Document 🔍

---

Ⓐ **Human Rights Def. Ctr. v. Livingston Cnty., 2016 U.S. Dist. LEXIS 43164**

Copy Citation

United States District Court for the Eastern District of Michigan, Southern Division

March 31, 2016, Decided; March 31, 2016, Filed

Case No. 11-CV-13460

**Reporter**

2016 U.S. Dist. LEXIS 43164 *

HUMAN RIGHTS DEFENSE CENTER, d/b/a Prison Legal News, Plaintiff, v. LIVINGSTON COUNTY SHERIFF BOB BEZOTTE, individually and officially, and LIVINGSTON COUNTY, Defendants.

**Prior History:** Prison Legal News v. Bezotte, 2013 U.S. Dist. LEXIS 45064 ( E.D. Mich., Mar. 29, 2013)

## Core Terms

inmates, Jail, mail, discovery, Sanctions, amended complaint, designated, preliminary injunction, supplemental complaint, notify, recipient, costs, injunction, parties, notice, detainees, rights, due process claim, third party, detainees–witnesses, impartial, reconsideration motion, motion for an order, allow access, allegations, factors, penological interest, show cause, Depositions, regulation

**Counsel:** **[*1]** For Prison Legal News, Plaintiff: Brian J. Prain ⌄, Law Office of Brian J. Prain, PLLC ⌄, Romulus, MI; Daniel E. Manville ⌄, Civil Rights Clinic, East Lansing, MI; Lance T. Weber ⌄, Lake Worth, FL; Thomas M. Loeb ⌄, Farmington Hills, MI.

For Sheriff Bob Bezotte, County of Livingston, Defendants: Lindsey A. Kaczmarek ⌄, Cummings, McClorey, Davis & Acho, P.L.C. ⌄, Livonia, MI; T. Joseph Seward, Cummings, McClorey, Livonia, MI.

For American Civil Liberties Union Fund of Michigan, Amicus: Daniel S. Korobkin, American Civil Liberties Union of Michigan, Detroit, MI.

**Judges:** Honorable Denise Page Hood ⌄, Chief United States District Judge.

**Opinion by:** Denise Page Hood ⌄

## Opinion

**ORDER REGARDING VARIOUS MOTIONS**

**I. Background**

The Plaintiff, Prison Legal News, and Defendants, Livingston County and Bob Bezotte, have filed various motions that remain outstanding. All of those outstanding motions, except for Docket No. 127, are addressed herein. A short summary of the claims of Plaintiff can be found in other court Orders, specifically the Court's Orders dated March 29, 2013 [Docket Nos. 63, 64]. The Court notes that it has conducted three hearings regarding a number of the motions discussed in this Order—on April 23, 2014, May 9, 2014, and March 9, **[*2]** 2016. With respect to each motion discussed, the Court will specifically identify any hearing at which the motion was discussed. In addition, at the March 9, 2016, hearing, the parties agreed to withdraw their respective motions for summary judgment [Docket Nos. 155, 156/157], with the understanding that they would be able to re-file them in the future, after the outstanding discovery matters are resolved and discovery is completed. 🔋

**II. Plaintiff's Motion for Reconsideration of Order Denying Plaintiff's Motion for Preliminary Injunction [Docket No. 66]**

**A. Motion for Reconsideration**

Plaintiff timely filed a motion for Reconsideration of the Court's March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction. In order to obtain reconsideration **[*3]** of a particular matter, the party bringing the motion for reconsideration must: (1) demonstrate a palpable

RECEIVED by MCOA 2/2/2023 12:35:06 PM

defect by which the court and the parties have been misled; and (2) demonstrate that "correcting the defect will result in a different disposition of the case." *See also* Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004); *Aetna Cas. and Sur. Co. v. Dow Chemical Co.*, 44 F.Supp.2d 865, 866 (E.D. Mich. 1999); *Kirkpatrick v. General Electric*, 969 F.Supp. 457, 459 (E.D. Mich. 1997). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. MICH. LR 7.1(h)(3); *Maiberger v. City of Livonia*, 747 F.Supp.2d 759 (E.D. Mich. 2010).

Plaintiff first asserts that the Court misapplied the law and facts in determining that a preliminary injunction was not warranted. Plaintiff claims that the Court erred in not issuing a preliminary injunction regarding Defendants' practices that prohibit delivery to inmates of books, magazines, and any other publications that are not printed on postcards. This argument, however, merely restates arguments previously made and ruled upon by this Court, and Plaintiff has demonstrated no palpable defect by which the Court and the parties have been misled. Plaintiff's Motion for Reconsideration is denied with respect to the rulings the Court made in the March 29, 2013 Order Denying Plaintiff's Motion for Preliminary **[*4]** Injunction.

Plaintiff also accurately asserts that the Court failed to address Plaintiff's 14th Amendment due process claim when ruling on Plaintiff's Motion for Preliminary Injunction. Plaintiff claims the Court's failure to address the due process claim is, in itself, sufficient grounds for granting reconsideration. The Court agrees — but only to the extent that granting the Motion for Reconsideration means that the Court needs to address Plaintiff's 14th Amendment due process claim in the context of Plaintiff's motion for preliminary injunction. The Court grants Plaintiff's Motion for Reconsideration insofar as Plaintiff requests that the Court address and decide whether Plaintiff is entitled to a preliminary injunction with respect to its 14th Amendment due process claim. The Court notes that the parties briefed this issue when filing their briefs addressing Plaintiff's motion for preliminary injunction. 2⬇. The Court concludes that additional briefing is not necessary, and the Court will decide the issue on the briefs the parties filed regarding Plaintiff's Motion for Preliminary Injunction. [Docket Nos. 25, 32, 34]

For the reasons stated in this Section II.A., the Court grants in part and denies in part Plaintiff's Motion for Reconsideration.

## B. 14th Amendment Due Process Claim

The Court utilizes the same standard for injunctive relief set forth in its March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction; specifically that:

> The district court must consider four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant would suffer irreparable harm absent a preliminary injunction; (3) whether granting the preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction is in the public's best interest. *Overstreet*, 305 F.3d at 573. The Court must make specific findings on each factor unless fewer factors would be dispositive. *Performance Unlimited v. Questar Publishers, Inc.* 52 F.3d 1373, 1381 (6th Cir. 1995)....

[Docket No. 63, PgID 1975]

### 1. Likelihood of Success on the Merits

The Court must engage in a two-step analysis to determine whether the challenged regulation/policy is reasonably related to a legitimate penological interest**.** *See* Thornburgh v. Abbott, 490 U.S. 401, 408-09, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); *Hrdlicka v. Reniff*, 631 F.3d 1044, 1048 (9th Cir. 2011). The Court must first determine whether Plaintiff has asserted a protected constitutional interest before analyzing whether Defendants' **[*6]** regulation is related to a legitimate penological interest. *Hrdlicka*, 631 F.3d at 1048 ("we first determine whether any First Amendment interest is implicated" before "apply[ing] the four-factor *Turner* test").

For the reasons that follow, the Court finds that Plaintiff's 14th Amendment due process claims regarding Defendants' notice of rejected mail/opportunity to appeal such reject policy implicate a constitutionally protected interest. The Supreme Court has held that due process requires a governmental entity's "decision to censor or withhold delivery of a particular letter . . . be accompanied by *minimal procedural safeguards*" to be constitutional. *Procunier v. Martinez*, 416 U.S. 396, 417, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974) (emphasis added). The *Martinez* court concluded that such "minimal procedural safeguards" include: (1) notice must be given to the inmate to whom the rejected letter was addressed; (2) the author of the letter must be given a reasonable opportunity to object to (*i.e.*, heard with respect to) the decision to reject the letter; and (3) complaints concerning the rejection must be reviewed by someone other than the individual who originally rejected the letter. *Id.* at 418-19. The Sixth Circuit has since elaborated on the *Martinez* court's conclusion, stating that:

> As an initial matter, we note that the "minimum procedural **[*7]** safeguards" referred to in *Martinez* are not mandated solely because of the Due Process Clause of the Fourteenth Amendment, but are primarily required because of the First Amendment free speech rights that are being protected. It is because of the concerns over protecting the freedom of speech and preventing the chilling of speech that procedural safeguards must be in place before letters are withheld or censored. *See* Martinez, 416 U.S. at 406 n. 10, 418-19, 94 S.Ct. at 1808 n. 10, 1814[;] *Campbell v. Sumner*, 587 F.Supp. 376, 378 (D.Nev.1984). Therefore, we then determine which procedures are required under the Due Process Clause to adequately protect the important First Amendment interests at stake. 3⬇

> We first hold that an incoming mail censorship regulation must provide that notice of rejection be given to the inmate-recipient. The need for such a requirement is evident: without notice of rejection, censorship of protected speech can escape detection by inmates and therefore go unchallenged. Although prison officials may have occasionally, or even consistently, given notice to inmates, the regulation does not require that notice be given.

> Second, we hold that the mail censorship regulation is insufficient because it fails to require that notice and an opportunity to protest the decision be given to the author of the rejected letter. We reach this conclusion for two reasons. First, the decision in **[*8]** *Martinez*, as previously discussed, was premised on the fact that the First Amendment rights of free citizens were implicated by the censorship of prisoners' mail. Without notice of the impending rejection, he would not be able to challenge the decision which may infringe his right to free speech. *Cf.* Trudeau v. Wyrick, 713 F.2d 1360, 1366 (8th Cir.1983)

RECEIVED by MCOA 2/2/2023 12:35:06 PM

(author of letter brought a First Amendment challenge);[] Abdul Wali v. Coughlin, 754 F.2d 1015, 1027-28 (2d Cir.1985) (the author would have standing to challenge interference with prisoners' mail). Second, since the inmate-recipient would not have seen the contents of the withheld letter, he may require the aid of the author to meaningfully challenge the rejection decision. See Cofone v. Manson, 409 F.Supp. 1033, 1042 (D.Conn.1976) (holding that a publisher must receive notice when a prison official decides to withhold a particular publication since a prisoner "cannot be expected to marshal arguments in favor of its admission without the assistance of someone familiar with the material").

We conclude, finally, that a mail censorship regulation must provide for an appeal of the rejection decision to an impartial third party prior to the letter being returned. This is necessary to ensure that future rejection decisions are fair, and based on appropriate factors.

Martin v. Kelley, 803 F.2d 236, 243-44 (6th Cir. 1986).

Based on Martinez and Martin, the Court finds that Plaintiff has a constitutionally protected interests in: (a) receiving notification from Defendants when Defendants reject (i.e., do not deliver) mail Plaintiff sends to designated inmates at the Livingston County Jail, and (b) being able to appeal any such rejection to an impartial third party (at least with respect to the initial copies of any publication).**4±** In this case, it is undisputed that the Livingston County Jail policy does not require that a sender or the designated inmate recipient be notified that mail that has been rejected, nor does it provide that such sender or inmate have a right to appeal/be heard with respect to the rejection of the mail. [See, e.g., Docket No. 155-7, PgID 3625] Likewise, it is undisputed that Defendants did not notify Plaintiff or any designated inmate recipients at the Livingston County Jail when Defendants rejected (did not deliver) publications sent by Plaintiff to such inmates. [Docket No. 25-2, PgID 529, **[*10]** ¶ 11; Docket No. 25-6, PgID 556, ¶ 6; Docket No. 155-7, PgID 3617, 3625]

Defendants argument regarding Plaintiff's procedural due process rights focused on the issue of standing (which Plaintiff has for 14th Amendment purposes, as the Court held in its March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction). Defendants only peripherally addressed the issue of their failure to notify Plaintiff or inmates that Defendants rejected Plaintiff's publications sent to designated inmates. To the extent Defendants did discuss the issue of procedural due process, their argument was limited to citing a district court case from Utah regarding "promotional sample packets," a case which is neither persuasive nor binding on this Court. See Prison Legal News v. Cheshire, 2006 U.S. Dist. LEXIS 48099, at *25-26 (D. Utah June 30, 2006).

The Court now must engage in the second step of the analysis applied in Thornburgh, i.e., determining whether the challenged regulation is reasonably related to a legitimate penological interest. Hrdlicka, 631 F.3d at 1048; Thornburgh, 490 U.S. at 408-09. As the Court stated in its March 29, 2013 Order denying Plaintiff's **[*11]** Motion for Preliminary Injunction:

The Supreme Court has identified four factors to consider when determining whether "a prison regulation impinges on inmates' constitutional rights." Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). The Turner test requires that:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. there must be alternative means of exercising the right that remain open to prison inmates;
>
> 3. we must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and
>
> 4. there must not be alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

Jones v. Caruso, 569 F.3d 258, 267 (6th Cir. 2009) (citing Turner, 482 U.S. at 89-91). Failure to satisfy the first factor is dispositive. Turner, 482 U.S. at 89-90. The remaining factors must be balanced together in order to evaluate the reasonableness of the challenged regulation. Jones, 569 F.3d at 267. The Court will review the challenged regulation with deference to "the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Thornburgh, 490 U.S. at 408.

[Docket No. 63, PgID 1975-76]

The **[*12]** Court finds that Defendant has failed to satisfy the first Turner factor. Defendants have not even provided a legitimate penological interest why Defendants do not notify the sender or the designated inmate recipient that the sender's mail to such intended inmate recipient was rejected (which necessarily precludes the ability to appeal any such rejection to an impartial third party). For that reason, the Court cannot find that there is any rational connection to a legitimate penological interest for failing to notify the sender or designated inmate recipient of the rejection (or not affording them the right to appeal any such rejection to an impartial third party). Defendant's failure to satisfy the first Turner factor is dispositive. The Court concludes that the challenged regulation (not providing notice to Plaintiff or the designated inmate recipient that Defendants rejected mail sent by Plaintiff to the designated inmates and not affording either of them the opportunity to appeal such rejection to an impartial third party) is not reasonably related to a legitimate penological interest.

With respect to Plaintiff's 14th Amendment procedural due process claim, the Court holds that it appears likely **[*13]** that Plaintiff will be successful on the merits.

*2. The Remaining Factors*

The Court also finds that, because Plaintiff's constitutional rights likely are being violated, the remaining three injunctive relief factors (irreparable harm, harm to others, public interest) weigh in Plaintiff's favor. Plaintiff is likely to suffer irreparable harm if an injunction requiring notice to Plaintiff and the designated inmate of rejected mail from Plaintiff to such inmate (and affording Plaintiff and the designated inmate recipient the right to appeal such rejection to an impartial third party) is not granted. See, e.g., Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati, 822 F.2d 1390, 1400 (6th Cir. 1987) ("there is potential irreparable injury in the form of a violation of constitutional rights"); Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996) (there is a "presumption of irreparable injury that flows from violation of constitutional

RECEIVED by MCOA 2/2/2023 12:35:06 PM

rights"). Further, as the Court has concluded that "there is a likelihood that the [Defendant's policy] will be found unconstitutional [*vis a vis* the absence of notice to the sender of the mail or the designated inmate recipient and the right to appeal any such rejection to an impartial third party]; it is therefore questionable whether [Livingston County] has any 'valid' interest in enforcing the **[*14]** policy]. Consequently, [the Court] find[s] no substantial harm in preventing Defendants from enforcing it" insofar as Defendants fail to provide such notice. *Planned Parenthood*, 822 F.2d at 1400. "Finally, the last factor—whether the public interest is served by the injunction—is also met, since the public is certainly interested in the prevention of enforcement of [a policy] which may be unconstitutional." *Id.*

The Court finds that all four factors weigh in favor of Plaintiff with respect to its request for a preliminary injunction with respect to its 14th Amendment due process claim. Specifically, the Court concludes that Plaintiff is entitled to a preliminary injunction as to Defendants' failure to provide notice to, and an opportunity to appeal by, Plaintiff and designated inmate recipients when Defendants reject publications sent by Plaintiff to such designated inmates at Livingston County Jail.

The Court grants Plaintiff's motion for preliminary injunction with respect to its 14th Amendment procedural due process claim. In addition, the Court orders that, effective immediately, Defendants must, in every instance that Defendants reject (*i.e.*, do not deliver) mail sent by Plaintiff to a designated inmate at the Livingston County Jail (at least with **[*15]** respect to the initial copy of any publication): (a) notify Plaintiff of such rejection; (b) notify the designated inmate recipient of such rejection; and (c) notify Plaintiff and the designated inmate recipient of the right to —and afford Plaintiff and the designated inmate recipient the opportunity to—appeal any such rejection to an impartial third party.

### III. Plaintiff's Motion for an Injunction to Allow Access to Detainees-Witnesses [Docket No. 124]

On January 13, 2014, Plaintiff moved the Court to order Defendants to allow Plaintiff's attorneys and experts access to possible inmate witnesses located at the Livingston County Jail. This motion was fully briefed, and its subject matter was argued at a hearing on April 23, 2014.

Plaintiff stated at the April 23, 2014 hearing that the matters at issue in this motion for an injunction to allow access to detainees-witness and the matters at issue in Plaintiff's motion to compel entry on land [Docket No. 123] were basically the same. The Court agrees with Plaintiff and, for the same reasons the motion to compel entry on land was denied, the Court will deny Plaintiff's motion for an injunction to allow access to detainees-witness. As the Court **[*16]** stated in addressing the motion to compel entry on land in its April 14, 2015 Order:

> Here, Plaintiff requests that the Court allow it to visit the Livingston County Jail to review the mailroom, the cell areas, and the law library of the Livingston County Jail, requests permission to review the processing of the mail at the jail, and also permission to interview "detainees confined at the jail" to discuss "issues pertaining to this litigation." Plaintiff has failed to cite to any cases in which a Court has allowed attorneys who are not seeking to give detainees legal advice or represent them in some way have access to detainees while incarcerated to further their own litigious goals. As stated in this Court's March 29, 2013, Order, PLN does not have a right to access inmates in order to vindicate its own constitutional grievances. *See Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1513-14 (11th Cir. 1992) (reasoning that "[t]he Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right" and case law does not support "the conclusion that the Government infringes constitutional associational freedom when it denies access to those whom it lawfully detains"); *Ukrainian-American Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1382, 282 U.S. App. D.C. 225 (D.C. Cir. 1990) (reasoning that "[t]o admit everyone who would like to **[*17]** advise the [detainee], each in accordance with his own view of the good life, and to communicate their offers of assistance would impose a substantial burden upon the Government.").
>
> Plaintiff again seems to seek to inspect the mailroom and storage facilities, review the mail procedures, review the jail cells, and speak with inmates to assert its own rights and build its own case. Plaintiff is a publication and is not in the business of informing inmates of their legal rights [or] providing legal representation such that i[t] should have the same level of access to inmates as attorneys and legal aid organizations. The Court finds no right that "guarantees [Plaintiff] governmental assistance in pursuing [its] political objective." *Ukrainian-American Bar*, 893 F.2d at 1380. This Court is satisfied that, as Plaintiff noted, this is indeed a discovery issue but "rule 34 [does not] permit[] blanket discovery upon [a] bare skeletal request when confronted with an objection." *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). Plaintiff has failed to show how the information it seeks by entering the jail is relevant to its constitutional claims at this time or that access to information cannot be obtained by other means.

[Docket No. 221, PgID 6206-08 (emphasis added)]

As the foregoing language **[*18]** reveals, the Court implicitly denied Plaintiff's motion for an injunction to allow access to detainees-witnesses in its April 14, 2015 Order. [Docket No. 221] In reviewing Plaintiff's brief in support of its motion for an injunction to allow access to detainees-witnesses, the Court finds no argument or law to persuade the Court that it should not apply the reasoning set forth above in deciding Plaintiff's motion for an injunction to allow access to detainees-witnesses. Most significantly, the present action is not an action brought on behalf of inmates of Livingston County Jail, and Plaintiff "does not have a right to access inmates in order to vindicate its own constitutional grievances." *Haitian Refugee Center*, 953 F.2d at 1513-14.

The Court denies Plaintiff's motion for an injunction to allow access to detainees-witnesses.

### IV. Defendants' Motion for Leave of Court to Take Depositions [Docket No. 139]

On January 30, 2014, Defendants moved the Court for leave to depose four former inmates at the Livingston County Jail to whom Plaintiff attempted to mail its publications. Plaintiff objects to Defendants' motion for four reasons: (1) the knowledge by Defendants of the elements of Plaintiff's claims; (2) the misbehavior of Defendants' **[*19]** counsel; (3) lack of merit; and (4) untimeliness. The parties argued this motion at the May 9, 2014 hearing.

Defendants contend that they received Declarations from the four individuals (Michael Stoll, Michael Rickman, Brian Rheingans, and Andrew Tweedy) in December 2013. In each declaration, the former Livingston County Jail inmate declared that he had not received any materials from Plaintiff or been notified that Plaintiff had tried to send materials to him while at the Livingston County Jail. At the time Defendants filed their

RECEIVED by MCOA 2/2/2023 12:35:06 PM

2/2/23, 8:11 AM — Human Rights Council 13 v. Livingston Co...

Case 2:22-cv-13070-MAG-CI  ECF No. 31-3, PageID.425  filed 03/07/23  Page 45 of 52

motion, three of the inmates were incarcerated at prisons throughout Michigan, including at least one in the Upper Peninsula near the Michigan/Wisconsin border. The fourth individual had been released from prison, though Defendant had not yet located him.

The Court is not persuaded that Defendants were entitled to the relief they sought in 2014, nor that such relief is necessary or appropriate at this time. First, the Court is not persuaded by Defendants' contention that they only became aware of the need to depose these four individuals in December 2013/January 2014. Defendants were or reasonably should have been on notice since the outset of the litigation **[*20]** that Plaintiff had a claim based on Defendants' failure to deliver mail to designated inmates at the Livingston County Jail. In April 2013, in Plaintiff's responses to Defendants' first set of discovery requests, Plaintiff identified two of the four individuals. Further, Plaintiff specifically identified these four individuals on a witness list filed August 23, 2013, over five months before Defendants' motion was filed.

Second, Defendants claim to need to talk to these four individuals because each of them allegedly: (1) was sent materials by Plaintiff (though none of those four individuals has personal knowledge that such materials were sent to them); (2) can testify that he did not receive any materials from Plaintiff while incarcerated at Livingston County Jail; and (3) was not notified by Defendants (or anyone associated with Livingston County Jail) that Defendants had rejected (not delivered) mail sent by Plaintiff that was specifically addressed to him. Since the motion was filed, however, Livingston County Jail Administrator, Lieutenant Tom Cremonte ("Cremonte") has testified that Defendants did not deliver materials mailed by Plaintiff to inmates at the Livingston County Jail **[*21]** (even if addressed to a designated inmate), nor did Defendants notify Plaintiff or any inmates to whom Plaintiff's materials were sent that Defendants had received—but did not deliver—such materials. [Docket No. 155-7, PgID 3625] As Cremonte has admitted to the very conduct to which these four individuals will testify, it is unclear that their testimony is still necessary.

In addition, it is not clear to the Court where the four individuals are located at this time. In light of Cremonte's admissions, the value of and need for these four witnesses is debatable, at best. If they are still in the Michigan prison system and/or located throughout Michigan (as they were when Defendants filed their motion), the Court is not persuaded that devoting judicial resources or the parties' resources on this issue furthers the interests of justice at this time. In the event that this matter ultimately proceeds to trial and these four witnesses will be called to testify, the Court will consider a renewed motion by Defendants to take the depositions of these four individuals, if Defendants still desire to depose them.

For the reasons stated above, the Court denies Defendants' Motion for Leave of Court **[*22]** to Take Depositions, without prejudice.


### V. Defendants' Motion for Sanctions [Docket No. 159]

In its March 10, 2014 Motion for Sanctions, Defendants ask the Court to sanction: (a) Plaintiff, for filing a Motion to File Supplemental Complaint with allegations Plaintiff knew or should have known were frivolous and lacked merit, and (b) "plaintiff" ACLU, for acting in bad faith when it conducted discovery "far beyond any scope as an *amicus curiae* and . . . further outside of the scheduling order." The parties have fully briefed the Motion for Sanctions, and this Court heard arguments on the motion at the May 9, 2014 hearing.


### A. Sanctions Warranted Against Plaintiff

Defendants contend that Plaintiff should be sanctioned pursuant to 28 U.S.C. § 1927 for filing a Motion for Leave to File a Supplemental Complaint ("Proposed Supplemental Complaint") on January 10, 2014 [Docket No. 122]. Section 1927 provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The instant motion for sanctions constitutes the second time that Defendants **[*23]** have requested that Plaintiff be sanctioned for filing the Proposed Supplemental Complaint. The first time Defendants sought sanctions against Plaintiff for filing the Proposed Supplemental Complaint was in their response to the Proposed Supplemental Complaint, filed on January 27, 2014 [Docket No. 133]. When Plaintiff withdrew the Proposed Supplemental Complaint on February 5, 2014 [Docket No. 147], however, Defendants' initial request for sanctions was obviated. Defendants argue that sanctions should be imposed against Plaintiff because it "knowingly and frivolously pursued a meritless claim in its Proposed Supplemental Complaint." Specifically, Defendants states that Plaintiff's Supplemental Motion includes claims that Plaintiff had First Amendment rights 'to communicate with those confined to determine whether they have information pertaining to legal matters that said detainee could be a witness for' and to have correspondence delivered from an 'attorney of record.'" [Docket No. 159, PgID 4572 (quoting Docket No. 122-1, PgID 2693, ¶¶ 7-8)] Defendant argues that Plaintiff knew or reasonably should have known that filing such a claim was frivolous and vexatious because the Court had rejected those **[*24]** claims in an Order Regarding Defendants' Motion for Partial Summary Judgment, issued on March 29, 2013 [Docket No. 64]. In that Order, the Court stated that Plaintiff does not have "a right to litigate and access those who are lawfully in government custody" and that Plaintiff "failed to state a claim for a constitutional violation as to Defendants' failure to allow visitation of inmates or delivery of 'legal mail.'" *Id.* at PgID 1993. Defendants contend that Plaintiff should be sanctioned because an "attempt to raise a claim that ha[s] already been rejected is sanctionable under section 1927." [Docket No. 159, PgID 4572 (citing *Pharmacy Records v. Simmons*, 2006 U.S. Dist. LEXIS 2789, 2006 WL 156669, at *3 (E.D. Mich., Jan. 20, 2006)* (Roberts, J.) (sanctioning plaintiffs' attorney under section 1927 for pursuing meritless claims based on an argument that was similar to an argument previously rejected by the Court))].

Plaintiff argues that Defendants' Motion for Sanctions is meritless legally and factually. Plaintiff contends that its initial Complaint alleged that Plaintiff's in-house counsel sought to contact detainees before the lawsuit was filed (Compl. ¶¶ 22, 23), a right the Court concluded Plaintiff did not have. [Docket No. 64, PgID 1992] Plaintiff states that, in the Proposed Supplemental Complaint, Plaintiff **[*25]** alleged that it sent letters to detainees at the Livingston County Jail as part of discovery and those letters were not delivered to the detainees. Plaintiff then expounds on the need for parties to be able to present evidence through witnesses and to meet with them in order to prepare for trial. [Docket No. 166, PgID 4660-64] Plaintiff contends that Defendants are interfering with the discovery process as to Plaintiff's counsel having access to potential witnesses (Livingston County Jail detainees).

With respect to its decision to withdraw the Proposed Supplemental Complaint, Plaintiff states that:

> After further discussion with counsel for [Plaintiff], it was decided the motion to file a supplemental complaint, even if granted, could not allow [Plaintiff] to have access to the requested witnesses until after trial was completed. It was determined to withdraw

RECEIVED by MCOA 2/2/2023 12:35:06 PM

the motion because [Plaintiff] had pending a motion for an order to obtain access to these detainees through the discovery process (D/E 124) and a grant of that motion would get immediate access to the potential witnesses.

[Docket No. 166, PgID 4658]

As Defendants' argue in their reply, Plaintiff does not explain how the allegations **[*26]** in the Proposed Supplemental Complaint were substantively different than the allegations that the Court rejected in its March 29, 2013 Order Regarding Defendants' Motion for Partial Summary Judgment. In both instances, Plaintiff challenged Defendants' denial of access by Plaintiff to detainees of the Livingston County Jail, something the Court had clearly ruled upon in its March 29, 2013 Order. The Court also is not persuaded by Plaintiff's contention that it decided to withdraw the Proposed Supplemental Complaint because it had filed a discovery motion for an order to access the detainees. The Proposed Supplemental Complaint was filed on January 10, 2014, and the motion for an order to access the detainees was filed on January 13, 2014, only three days later—and 14 days *before* Defendants filed their response to the Proposed Supplemental Complaint. In other words, Plaintiff had two weeks before Defendants' response within which it could have withdrawn the proposed Supplemental Motion that sought relief that the Court previously had ruled Plaintiff had no right to. Because Plaintiff elected to file the Proposed Supplemental Complaint after Defendants denied concurrence in it and because **[*27]** Plaintiff did not withdraw the meritless Proposed Supplemental Complaint when it filed its motion for an order to access detainees-witnesses (the reason Plaintiff now asserts for withdrawing the Proposed Supplemental Complaint), Defendants needlessly incurred the expense of responding to the Proposed Supplemental Complaint.

For the reasons stated above, the Court concludes that Defendants are entitled to sanctions against Plaintiff with respect to: (a) the reasonable fees and costs Defendants incurred in responding to Plaintiff's Proposed Supplemental Complaint, (b) the reasonable fees and costs of Defendants associated with preparing their Motion for Sanctions and corresponding reply brief, and (c) one-half (.5) hour of Mr. Seward's time for arguing the Motion for Sanctions at the May 9, 2014 hearing (collectively, "Defendants' Fees and Costs"). The Court orders Defendants to provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Defendants' Fees and Costs.

### B. Sanctions Not Warranted Against ACLU

Defendants recognize that the Court granted ACLU *amicus curiae* status in this lawsuit, and the ACLU had filed briefs in this matter on **[*28]** certain motions prior to Defendants filing the Motion for Sanctions on January 10, 2014. [Docket Nos. 28, 37, 56] Defendants contend that the ACLU also has acted as a litigating *amicus curiae* "by participating in discovery in this lawsuit when" the ACLU:

> 1. Made a FOIA request from the Livingston County Sheriff's Department requesting a list of all Livingston County Jail inmates on January 27, 2014;
>
> 2. Mailed 25 letters to inmates at the Livingston County Jail on February 19, 2014 (the "ACLU Letters"); and
>
> 3. Informed the inmates that the ACLU was investigating the Livingston County Jail's mailing policy and inquired whether any inmate(s) was interested in meeting with an ACLU attorney for the purpose of obtaining legal representation or advice regarding the Livingston County Jail mailing policy.

Defendants argue that because the ACLU acted in bad faith in conducting the above described discovery and otherwise acting as a "litigating *amicus curiae*," the Court should sanction the ACLU by dismissing them as *amicus curiae* and disallowing any information received as a result of this "investigation" conducted outside the scope of the scheduling order.

The Court is not persuaded that Defendants' **[*29]** motion has any merit with respect to the ACLU. First, other than Defendants' speculation, there is no evidence that the ACLU conducted discovery in this case. Second, although ACLU's counsel may have conferred with Plaintiff's counsel, the Court is not aware of any authority (and Defendants have cited none) that prohibits counsel for a party to litigation from consulting with other attorneys.

Third, the ACLU is pursuing an entirely separate legal issue and cause of action than Plaintiff. Plaintiff's lawsuit, as this Court has expressed, is about Plaintiff's rights, primarily centered on its First Amendment rights as a publisher. Plaintiff's lawsuit is not about the rights of inmates at the Livingston County Jail. *See, e.g.*, Section III, above; Docket No. 221, PgID 6206–08. The ACLU's efforts, including its FOIA request to obtain the names of the inmates on January 27, 2014 and mailing the ACLU Letters on February 19, 2014, are focused on the rights of inmates *vis a vis* the Livingston County Jail mailing policy. The rights of Plaintiff and the rights of inmates of the Livingston County Jail may be related, but they are not the same. Fourth, the very conduct of the ACLU about which Defendants complain **[*30]** in their Motion for Sanctions has become the subject of a lawsuit filed by the ACLU against Defendants — one in which this Court and the Sixth Circuit have found that Defendants unconstitutionally processed (or, more accurately, failed to process) the ACLU Letters.

For the reasons stated above, the Court concludes that Defendants' Motion for Sanctions should be denied to the extent they seek sanctions against the ACLU.

### C. Conclusion

Based on the analysis and conclusions set forth in Sections V.A. and B., the Court grants in part and denies in part Defendants' Motion for Sanctions.

### VI. Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 181]

Plaintiff seeks leave to file a Second Amended Complaint to add Lieutenant Tom Cremonte as a Defendant, and it has alleged sufficient facts to support First, Fifth and Fourteenth Amendment claims against him. Plaintiff also seeks to add factual allegations related to mail that was sent by Plaintiff to certain prisoners incarcerated at the Livingston County Jail after the date of the original complaint because Defendants have continued to censor Plaintiff's mail pursuant to Defendants' customs, practices and policies. Plaintiff contends that, if this Court grants **[*31]** the filing of this amended complaint, neither Plaintiff nor Defendants will need additional discovery as to the claims against Cremonte or as to

RECEIVED by MCOA 2/2/2023 12:35:06 PM

the inclusion of specific details regarding mail sent to the Livingston County Jail after the commencement of this action. Plaintiff further contends that the filing of the Second Amended Complaint will not unduly prejudice Defendants because the additional mail specified in the Second Amended Complaint was delivered directly to the Livingston County Jail, which Defendants control.

Defendants argue that Plaintiff's Motion for Leave to File a Second Amended Complaint should be denied because: (1) it is untimely, as it was filed after the close of discovery and the filing of cross-motions for summary judgment; (2) Plaintiff has failed to establish good cause for modification of the scheduling order; (3) Plaintiff knew of the factual basis for its request to add Cremonte and the new claims for common law conversion and unconstitutional takings at least 12 (and maybe as many as 26) months before filing the Motion for Leave to File a Second Amended Complaint; and (4) the amendments would be futile as to the claims against Cremonte, the new common **[*32]** law conversion claim, and the unconstitutional takings claims.

Plaintiff asserts that the new claims set forth in the Motion for Leave to File a Second Amended Complaint stem from information learned at the deposition of Cremonte, which did not occur until January 31, 2014 (two months before Plaintiff's Motion for Leave to File Second Amended Complaint was filed). Plaintiff also contends that any delay in seeking to add Cremonte and the new claims is primarily due to Defendants failure to provide responses to discovery requests.

Rule 15 permits a party to amend its complaint once as a matter of course within (i) twenty-one days after service of the complaint; or (ii) within twenty-one days after service of an answer to the complaint or a motion to dismiss, whichever is earlier. Fed. R. Civ. P. 15(a)(1). Thereafter, a party may only amend its complaint with the adverse parties' written consent or leave of court. Fed. R. Civ. P. 15(a)(2). **5** Rule 15 espouses a liberal standard to the extent that it authorizes district courts to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." _United States v. Midwest Suspension & Brake_, 49 F.3d 1197, 1202 (6th Cir. 1995). District courts "should deny leave to amend" in circumstances involving: **[*33]** (1) undue delay in seeking leave to amend; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies through previous amendments; (4) undue prejudice to adverse parties; and (5) futility of the proposed amendment. _Williams v. Detroit Bd. of Educ._, 306 F. App'x. 943, 949 (6th Cir. 2009). _See also Foman v. Davis_, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); _Crawford v. Roane_, 53 F.3d 750, 753 (6th Cir. 1995).

The Court finds that Plaintiff has good cause for seeking to further amend its Complaint to add claims against Cremonte, as well as the conversion and takings claims. Cremonte's deposition did not occur until shortly before Plaintiff filed its Motion for Leave to File Second Amended Complaint. As such, Plaintiff likely could not have known most of the information that Cremonte would provide, including: (a) the alleged extent of his involvement in processing the mail at Livingston County Jail; (b) what Cremonte **[*34]** (himself) did with mail sent by Plaintiff to the Livingston County Jail; and (c) what ultimately happened to the mail sent by Plaintiff to inmates at the Livingston County Jail. The lack of cooperation by Defendants _vis a vis_ discovery requests from Plaintiff also contributed to the inability of Plaintiff to fully recognize the claims Plaintiff now seeks to add to its cause of action. Based on the active motion practice of Plaintiff and the timing of the Motion for Leave to File Second Amended Complaint, the Court finds that Plaintiff has not exercised undue delay, acted with a dilatory motive, or failed to cure deficiencies through previous amendments.

The Court also finds that Defendant will not suffer undue prejudice by having to defend the new allegations in Plaintiff's Second Amended Complaint. First, the new allegations and claims stem from information Plaintiff obtained during its deposition of Cremonte, an employee of Defendants. The allegations arise out of the discovery that has occurred in this case, and Plaintiff has represented that it will not need any additional discovery to pursue the new claims. The Court intends to hold Plaintiff to that representation, and Plaintiff **[*35]** will not be able to conduct new discovery insofar as such discovery would turn on the new allegations or claims asserted in the Second Amended Complaint. **6**

Second, the parties have withdrawn their summary judgment motions. Defendants will have the opportunity to re-file their summary judgment motion and argue the reasons Plaintiff's claims against Cremonte and the new claims should be dismissed as a matter of law. Most, if not all, of Defendants' arguments have been formulated and, seemingly, incorporated into their previous summary judgment motion and/or their response to the Motion for Leave to File a Second Amended Complaint. In addition, although the Court will consider any arguments regarding the viability of Plaintiff's claims in any dispositive motion(s) filed in the future, the Court is not persuaded at this time that the proposed amendments are futile.

Finally, the Court finds that permitting Plaintiff's proposed amendments promotes the interests of justice. This case has been ongoing for several years, for a variety of reasons. **[*36]** The Court concludes that addressing the matters set forth in Plaintiff's Second Amended Complaint in the present litigation will best conserve the time and expense of the parties and the Court.

The Court grants Plaintiff's Motion for Leave to File Second Amended Complaint and orders Plaintiff to file with the Court, within seven days of the date of this Order, a copy of the Amended Complaint attached to its Motion for Leave to File Second Amended Complaint — with the title edited to read: "Second Amended Complaint for Damages, Declaratory Relief, Injunctive Relief and Jury Demand."

### VII. Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt [Docket No. 227]

On November 22, 2015, Plaintiff filed a motion asking the Court to hold Defendants in contempt. Plaintiff argues Defendants failed to comply with the Court's September 30, 2015 Order requiring Defendants to, on or before October 30, 2015: (a) produce certain discovery to Plaintiff; or (b) provide the Court with an affidavit stating why Defendants "cannot produce the requested information." The motion was fully briefed by the parties, and on March 9, 2016, the Court held a hearing on Plaintiff's motion. **[*37]**

It is undisputed that Defendant did not, on or before October 30, 2015, produce any discovery documents identified in the September 30, 2015 Order, nor did Defendants provide the Court with an affidavit that specified why Defendants could not produce the requested information to Plaintiff. It is further undisputed that, on October 30, 2015, Defendants sent Plaintiff an affidavit from Cremonte that purported to explain why Defendants could not produce the requested information.

In its Motion, Plaintiff asks that the Court to: (1) grant Plaintiff's motion for contempt; (2) order Defendants to appear to show cause why an order of civil contempt should not be entered against them; (3) order Defendants to produce the requested documents or strike/exclude Defendants from relying on their "alleged" security incidents caused by mail; (4) require Defendants to file sworn affidavit(s) showing compliance with the Court's orders; and (5) award costs and attorney fees associated with this motion to Plaintiff.

RECEIVED by MCOA 2/2/2023 12:35:06 PM

2/2/23, 8:11 AM                    Human Rights Def. Ctr. v. Livingston Cnty., 2018 U.S. Dist. LEXIS 231714

Case 2:22-cv-13070-MAG-CI    ECF No. 31-3, PageID.428    Filed 03/07/23    Page 48 of 52

Prior to the March 9, 2016 hearing, Defendants notified Plaintiff that it was updating its software and, as a result, beginning in December 2015, Defendants were able to begin searching jail **[\*38]** records back to 2009. At the hearing, the parties argued and discussed what information was now available to certain persons at the Livingston County Sheriff's Department, as well as the need for additional information from persons generally referenced but not identified in Cremonte's October 30, 2015 affidavit. As a result of the March 9, 2016 hearing, the parties stipulated to the entry of an order granting Plaintiff limited discovery. [*See* Docket No. 237].

The Court finds that such stipulated order addresses and resolves the relief Plaintiff requested with respect to parts (2)-(4) above. As to part (1), the Court concludes that Defendants should not be held in contempt because they did cause Cremonte to timely file an affidavit that addressed, albeit generally and inadequately (as discussed below), the information identified in the Court's September 30, 2015 Order. In addition, because Plaintiff received the affidavit within the time parameters set by the Court, the Court finds that Plaintiff was not prejudiced by Defendants' failure to comply with the Court's directive to file the affidavit with the Court.

In determining whether costs and fees should be assessed against Defendant **[\*39]** (part (5)), the Court finds that Defendants efforts to comply with and satisfy the directives of the Court in the September 30, 2015 Order were underwhelming and inadequate—and warrant the imposition of an award of costs and fees against Defendants. First, as Defendants admit, the affidavit of Cremonte was not filed with the Court — as the Court expressly required in the September 30, 2015 Order, when it stated: "If Defendants determine that they are unable to give an answer to a specific RFP, Defendants must provide the Court with signed affidavits stating why they cannot produce the requested information." [Docket No. 226, PgID 6254 (emphasis added)].

Second, as is evident by even a cursory review of Cremonte's October, 30, 2015 affidavit, very few of his statements were based on his personal knowledge of what information was available. Instead, Cremonte averred what he allegedly had been told by various other Livingston County employees, none of whom are identified in his affidavit. Likewise, the affidavit provides little detail about why Defendants could not produce the requested information (in fact, Cremonte does not really even state that Defendants cannot produce it); rather, Cremonte **[\*40]** repeatedly suggests that Defendants did not have the resources (the personnel) to produce the requested information.

Third, the Court notes that the September 30, 2015 Order stemmed from a motion to compel filed by Plaintiff due to Defendants' ongoing failure to comply with certain discovery requests of Plaintiff. In the September 30, 2015 Order, the Court analyzed but ultimately denied Plaintiff's request that the Court sanction Defendants for their failure to produce the requested and required information. When doing so, however, the Court stated, "the Court does not determine that sanctions are warranted at this time. Defendant believed that it was in compliance with the Court's Order. The Court is not satisfied that Defendants intentionally defied its Order or purposefully attempted to evade compliance." [Docket No. 226, PgID 6255]

With respect to the September 30, 2015 Order, the Court again finds that Defendants did not intentionally defy the Court's Order or purposefully evade compliance. Notwithstanding the absence of any intentional defiance or purposeful evasion of compliance, however, the Court concludes that the interests of justice, including to compensate Plaintiff for **[\*41]** having to file a motion that it should never have had to file and to encourage and ensure Defendants' full compliance with future orders of the Court, demand the imposition of costs against Defendant in connection with this matter at this time. Defendants' actions (or inactions) have required Plaintiff to repeatedly file motions to obtain discovery to which the Court has determined Plaintiff is entitled. More significantly, as it relates to the instant motion, Defendants failed to take action to comply with the directives of the Court for a period of several weeks after Plaintiff notified Defendants that they failed to comply with the Court's September 30, 2015 Order, leading Plaintiff to file (appropriately) the instant motion.

The Court grants Plaintiff's Motion for Order to Show Cause to the extent that Plaintiff asked the Court to award costs and attorney fees associated with this Motion for Order to Show Cause to Plaintiff. The Court orders that Defendants shall pay Plaintiff the costs and fees Plaintiff reasonably incurred in preparing and filing the Motion for Order to Show Cause (and accompanying brief), preparing and filing its reply brief with respect to the same, and appearing **[\*42]** at the March 9, 2016 hearing (collectively, "Plaintiff's Fees and Costs"). The Court orders Plaintiff to provide the Court, within 30 days of the date of this Opinion, a detailed invoice that sets forth the basis for Plaintiff's Fees and Costs.

Based on the analysis and conclusions set forth in this Section VII, the Court grants in part and denies in part Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt.

## IX. CONCLUSION

Accordingly,

A. IT IS ORDERED that Plaintiff's Motion for Reconsideration of Order Denying Plaintiff's Motion for Preliminary Injunction [Docket No. 66] is GRANTED IN PART and DENIED IN PART.

B. IT IS FURTHER ORDERED that Plaintiff's Motion for an Injunction to Allow Access to Detainees-Witnesses [Docket No. 124] is DENIED.

C. IT IS FURTHER ORDERED that Defendants' Motion for Leave of Court to Take Depositions [Docket No. 139] is DENIED WITHOUT PREJUDICE.

D. IT IS FURTHER ORDERED that Defendants' Motion for Sanctions [Docket No. 159] is GRANTED IN PART and DENIED IN PART.

E. IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 181] is GRANTED.

F. IT IS FURTHER ORDERED that Plaintiff's Motion **[\*43]**  for Order to Show Cause Why Defendants Should Not be Held in Contempt [Docket No. 227] is GRANTED IN PART and DENIED IN PART.

G. IT IS FURTHER ORDERED that, effective immediately, Defendants shall, in every instance that Defendants reject (*i.e.*, do not deliver) mail sent by Plaintiff to a designated inmate at the Livingston County Jail (at least with respect to the initial copy of any publication): (a) notify Plaintiff of such rejection; (b) notify the designated inmate recipient of such rejection; and (c) notify Plaintiff and the designated inmate recipient of the right to—and afford Plaintiff and the designated inmate recipient the opportunity to—appeal any such rejection to an impartial third party.

RECEIVED by MCOA 2/2/2023 12:35:06 PM

H. IT IS FURTHER ORDERED that Defendants shall provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Defendants' Fees and Costs.

I. IT IS FURTHER ORDERED that Plaintiff shall file with the Court, within five days of the date of this Order, a copy of the Amended Complaint attached to its Motion for Leave to File Second Amended Complaint — with the title edited to read: "Second Amended Complaint for Damages, Declaratory Relief, Injunctive **[*44]** Relief and Jury Demand."

J. IT IS FURTHER ORDERED that Plaintiff shall provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Plaintiff's Fees and Costs.

IT IS SO ORDERED.

/s/ Denise Page Hood ▾

Denise Page Hood ▾

Chief Judge, United States District Court

Dated: March 31, 2016

---

**Footnotes**

**1** ⚏ In light of the withdrawal of Plaintiff's Motion for Summary Judgment, the Court DENIES AS MOOT Plaintiff's Motion to File Supplemental Authority [Docket No. 211] and Plaintiff's Notice of (Motion to File) Supplemental Authority [Docket No. 223]. In light of the withdrawal of Defendants' Motion for Summary Judgment, the Court DENIES AS MOOT Plaintiff's Motion to Strike Motion to Amend/Correct Motion for Summary Judgment [Docket No. 165].

**2** ⚏ The American Civil Liberties Union Fund ("ACLU") filed an *amicus curiae* brief with respect to Plaintiff's Motion **[*5]** for Preliminary Injunction, but the ACLU did not brief this issue.

**3** ⚏ The Court notes that in *Martin*, as in this case, **[*9]** the court concluded that the plaintiff did not demonstrate a likelihood of success with respect to its First Amendment claims (in fact, the *Martin* court actually ruled that the plaintiff's First Amendment claim was not viable**)**.

**4** ⚏ *See, e.g., Prison Legal News v. Livingston, 683 F.3d 201, 223 (5th Cir. 2012)* (emphasis in original) (after a review committee's denial of a publication, "*subsequent* denials of identical publications amount to routine enforcement of a rule with general applicability").

**5** ⚏ When a party seeks to add factual allegations concerning events that occurred after the date on which it filed the original complaint, a motion to supplement the complaint under Rule 15(d) — rather than a motion to amend the complaint under Rule 15(a) — is the mechanism by which to obtain such relief. The standard for granting leave to file a supplemental complaint under Rule 15(d) is the same as the standard for granting leave to file an amended complaint under Rule 15(a). *See Glatt v. Chicago Park District, 87 F.3d 190, 194 (7th Cir.1996)*.

**6** ⚏ Defendant, however, can move the Court if it believes it needs additional discovery with respect to the new claims set forth in the Second Amended Complaint.

 LexisNexis®

About
Privacy Policy

Cookie Policy
Terms & Conditions

RELX™

Copyright © 2023 LexisNexis.

RECEIVED by MCOA 2/2/2023 12:35:06 PM

**STATE OF MICHIGAN**
MI Court of Appeals

**Proof of Service**

| Case Title: | Case Number: |
|---|---|
| In Re Scott Andrew Witzke | TEMP-OV41E9XE |

1. Title(s) of the document(s) served:

| Filing Type | Document Title |
|---|---|
| ISI_CASE_INIT_FORM_DT | Case Initiation Form |
| Original Action/Complaint | Complaint for Writ of Superintending Control |
| Brief | Brief Final |
| Motion for Immediate Consideration | Mot for Immed Cons9deration |

2. On 02-02-2023, I served the document(s) described above on:

| Recipient | Address | Type |
|---|---|---|
| Scott Witzke<br>Self Represented | scottawitzke@gmail.com | e-Serve |
| Karen McDonald<br>Oakland County Prosecutor's Office<br>59083 | ocpoefile@oakgov.com | e-Serve |
| Frederick Miller<br>Frederick J. Miller, P.C.<br>41207 | fjmp41207@yahoo.com | e-Serve |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with MiFILE and its contents are true to the best of my information, knowledge, and belief.

02-02-2023
_____
Date

/s/ Scott Witzke
_____
Signature

RECEIVED by MCOA 2/2/2023 12:35:06 PM

S T A T E   O F   M I C H I G A N

IN THE COURT OF APPEALS

IN RE SCOTT ANDREW WITZKE,

    Petitioner,                      COA No. 364784

                                         Oakland County Circuit Court
                                         L.C. No. 2020-274746-FC

_____/

| | |
|---|---|
| **SCOTT ANDREW WITZKE** | **KAREN D. McDONALD (P59083)** |
| Petitioner, *in pro per* | **OAKLAND COUNTY PROSECUTOR** |
| 336 N. Saginaw Street | 1200 N. Telegraph Rd. |
| Pontiac, MI 48342 | Pontiac, MI 48341 |
| Telephone: (734) 496-5895 | Telephone: (248) 858-0656 |
| Facsimile: (734) 823-1325 | Facsimile: (248) 452-2208 |
| Email: scottawitzke@gmail.com | Email: vidac@oakgov.com |
| | |
| **HONORABLE YASMINE I. POLES** | **FREDERICK J. MILLER (P41207)** |
| Circuit Judge | Attorney for Defendant Raul Contreras |
| 6th Judicial Circuit Court | P.O.  Box 349 |
| 1200 N. Telegraph Rd., Department 404 | Metamora, MI 48455 |
| Pontiac, MI 48341-0404 | Telephone: (248) 628-0180 |
| Telephone: (248) 452-2002 | Facsimile: (810) 660-7202 |
| Email: polesy@oakgov.com | Email: fjmp41207@yahoo.com |

_____/

## **PROOF OF SERVICE**

On February 3, 2023, I sent via **PRIORITY FIRST-CLASS U.S. MAIL** a true copy of Complaint for Writ of Superintending Control, Brief in Support of Complaint for Writ of Superintending Control, together with Motion for Immediate Consideration to: **HONORABLE YASMINE I. POLES**, Circuit Judge, 1200 N. Telegraph Rd., Department 404, Pontiac, MI 48341-0404.

1

"I declare under the penalties of perjury that the above statement has been examined by me and that its contents are true to the best of my information, knowledge, and belief."

Executed at Pontiac, MI this 3rd day
of February, 2023
                                            /s/ Scott A. Witzke_____
                                            SCOTT ANDREW WITZKE
                                            Petitioner *in pro per*