*Witzke v. Bouchard, et al.*
Case No. 22-cv-13070

# EXHIBIT 6

*Johnson v. Disability*, E.D. Mich.
No. 22-10327 (Feb. 16, 2023)

3/7/23, 12:05 PM  Case 2:22-cv-13070-MAG-CI   ECF No. 31-7, PageID.441   Filed 08/07/23   Page 2 of 16
Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

Document: Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580                    Actions

Go to    Page  Page #    ∧  ∨    Search Document

# Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

**Copy Citation**

United States District Court for the Eastern District of Michigan, Southern Division

February 16, 2023, Decided; February 16, 2023, Filed

Case No. 22-10327

**Reporter**
**2023 U.S. Dist. LEXIS 26580 \*** | 2023 WL 2059033

KELLEY JOHNSON, Plaintiff, v. NFL PLAYER DISABILITY, NEUROCOGNITIVE & DEATH BENEFIT PLAN, et al., Defendants.

## Core Terms

Disability, fiduciary, benefits, appoint, Player, allegations, fiduciary duty, monitor, breach of fiduciary duty, Retirement, inform, eligible, modified, entity, disability benefits, claim for benefits, punctuation, decisions, breached, de facto, disclose, terms of the plan, benefit plan, powers, discretionary authority, initial claim, untimely, removal, knee, discretionary control

**Counsel:** **[\*1]** For Kelley Johnson, Plaintiff: Daimeon Cotton, Cotton Law Center, PLLC, Detroit, MI.

For NFL Player Disability, Neurocognitive & Death Benefit Plan, NFL Player Disability and Neurocognitive Benefit Board, Defendants: Edward Joseph Meehan, Groom Law Group, Chartered, Washington, DC; Michael Lee Junk, Shaun Gates, Groom Law Group, Washington, DC; William E. Altman, Fisher & Phillips, Birmingham, MI.

For The Detroit Lions, Inc., Defendant: Dennis J. Levasseur, Bodman, Detroit, MI; Michelle Thurber Czapski, Bodman PLC, Troy, MI.

For National Football League Management Council, Defendant: Eric Douglas Field, Littler Mendelson, Washington, DC; James Crowley, Stacey Recht Eisenstein, Akin Gump Strauss Hauer & Feld LLP, Washington, DC.

Russell,, Detroit, MI.

**Judges:** MARK A. GOLDSMITH ▼, United States District Judge.

**Opinion by:** MARK A. GOLDSMITH ▼

# Opinion

### OPINION & ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkts. 20, 27, 28, 29)

All Defendants in this case have filed motions to dismiss, and four motions to dismiss are before the Court. For the reasons that follow, the Court grants the motions to dismiss. 1⬇

### I. BACKGROUND

Plaintiff Kelley Johnson, **[*2]** a former National Football League (NFL) player, brings this action against Defendants NFL Player Disability, Neurocognitive & Death Benefit Plan (the Disability Plan); the NFL Player Disability, Neurocognitive & Death Benefit Board (the Disability Board); the Detroit Lions, Inc. (the Lions); the National Football League Management Council (NFLMC); and the National Football League Players Association (NFLPA). The action stems from Defendants' alleged breach of the terms of an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) and their alleged breach of fiduciary duty.

The Disability Plan is an ERISA-governed multiemployer welfare benefit plan that was established through collective bargaining agreements between the NFLMC, representing NFL member clubs, and the NFLPA, representing NFL players. Disability Plan at 1 (Dkt. 1-1) 2⬇; Compl. ¶ 5 (Dkt. 1). The plan provides disability benefits to eligible NFL players. Disability Plan at 1. The Disability Board is the plan's administrator and named fiduciary. Id. at Art. 1.2, Art. 9.2; Compl. ¶ 6. It has six voting members. Disability Plan Art. 9.1. Three members are appointed by the NFLPA, and three are appointed by the NFLMC. Id. The NFLPA **[*3]** is a union that functions as the "sole and exclusive bargaining representative" of NFL players. Id. Art. 1.26; see also Compl. ¶ 9. The NFLMC is a nonprofit association of member clubs that employ NFL players and functions as the "sole and exclusive collective bargaining representative" of the clubs. Disability Plan Art. 1.21; see also Compl. ¶ 8. Both the NFLMC and the NFLPA have the authority to remove and appoint a replacement for any board member that either one has appointed. Disability Plan Art. 9.1. They also each appoint (and may remove) one member of the three-member Disability Initial Claims Committee, which decides initial claims for disability benefits. Id. Art. 9.4.

On or about August 12, 1989, Johnson, while playing for the Lions as a wide receiver, was injured during a pre-season game against the Cleveland Browns when another player fell

treatment. Id. ¶ 14. On or about August 22, 1989, Johnson asked the Lions for help with his knee, and he was informed that he was "on his own" and "needed **[*4]** to seek personal treatment" for his knee. Id. ¶¶ 15-16. In September 1989, the Lions' physician diagnosed Johnson with a "medial meniscal tear, left knee or a chondral lesion with a loose body" and performed surgery on his knee. Id. ¶¶ 17-18. Johnson underwent physical therapy from September 1989 to January 1990, and he received compensation under his employment contract with the Lions during this time. Id. ¶¶ 20-21. In or around 1990, Johnson retired due to his injury. Id. ¶ 22.

Later, on or around October 30, 2018, Johnson received a letter from the Pro Football Retired Players Association stating that he would receive dental and vision benefits beginning in 2019. Id. ¶ 25. Johnson maintains that this letter was the first time he heard of any benefits, and, at this time, he was still unaware of benefits under the Disability Plan. Id. In or around February 2021, he received a Disability Plan booklet that described possible injuries for which players could apply to receive line-of-duty (LOD) benefits—a type of disability benefit offered to eligible former NFL players—under the Disability Plan. Id. ¶ 26; Disability Plan Art. 5.1. In or around March 2021, Johnson submitted a claim for **[*5]** benefits under the Disability Plan. Compl. ¶ 27. The Disability Initial Claims Committee denied Johnson's claim as untimely, as did the Disability Board on appeal. Id. ¶¶ 28-29.

Johnson filed this action, asserting two claims. The first claim is a breach of fiduciary duty claim under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Johnson alleges that Defendants breached their fiduciary duties under the statute by failing "to warn, inform and/or disclose to [him] the existence of a plan, eligibility under the Plan, or the extent of benefits under the Plan." Id. ¶ 37. He alleges that Defendants' silence was a "material omission" that caused him "to miss the opportunity to timely enroll in [the Disability] Plan." Id. The second claim is a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Johnson alleges that the denial of his benefit payments violates the terms of the Disability Plan and that Defendants "abused their discretion by denying [his] benefits under the Plan as untimely when the cause of the untimeliness was Defendants['] breach of their fiduciary duty to inform Plaintiff that the Plan existed." Id. ¶¶ 40-41.

## II. ANALYSIS 3

Defendants seek dismissal of both of Johnson's claims. The Court addresses each claim in turn. It finds that Defendants **[*6]** are entitled to dismissal of the breach of fiduciary duty claim. The complaint does not plausibly allege that the Disability Board, the named fiduciary of the Disability Plan, breached a fiduciary duty by failing to inform Johnson or disclose to him information about the Disability Plan and its benefits. And the complaint does not contain facts suggesting that the NFLMC, the NFLPA, or the Lions are de facto fiduciaries with regard to the alleged failure to disclose. The Court finds that Defendants are entitled to dismissal of the claim for benefits because Johnson has not stated a

### A. Breach of Fiduciary Duty Claim

A participant in an ERISA-governed benefit plan may sue the plan "to obtain other appropriate equitable relief" for violations of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). Such violations can include breaches of fiduciary duty. 29 U.S.C. § 1104(a)(1). A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove that: (i) the defendant is a plan fiduciary; (ii) the defendant breached its fiduciary duty; and (iii) the breach resulted in harm to the plaintiff. Chelf v. Prudential Ins. Co. of Am., 31 F.4th 459, 464 (6th Cir. 2022).

Therefore, "[t]he [*7] threshold question in all cases charging breach of ERISA fiduciary duty is whether the defendant was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Cataldo v. United States Steel Corp., 676 F.3d 542, 552 (6th Cir. 2012) (punctuation modified). The United States Court of Appeals for the Sixth Circuit has stated that, while fiduciary status "is broadly triggered with any control over plan assets, the inquiry in each case is granular, ask[ing] whether [an entity] is a fiduciary with respect to the particular act in question." Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich., 722 F.3d 861, 866 (6th Cir. 2013) (punctuation modified).

The Sixth Circuit has also explained that the definition of a fiduciary under ERISA is a functional one. Moore v. Lafayette Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006). "[F]or purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets." Id.; see also 29 U.S.C. § 1002(21)(A). "[A]n entity that exercises any authority or control over [the] disposition of a plan's assets becomes a fiduciary." Guyan Int'l Inc. v. Prof'l Benefits Adm'rs, Inc., 689 F.3d 793, 798 (6th Cir. 2012) (emphasis in original). For example, "discretionary determinations 'about whether a claimant is entitled to benefits under the terms of the plan documents' are exercises [*8] of fiduciary duty." Chelf, 31 F.4th at 465 (quoting Varity Corp. v. Howe, 516 U.S. 489, 511, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)). Whether a person or entity qualifies as a fiduciary is either a question of law or a mixed question of law and fact. Briscoe v. Fine, 444 F.3d 478, 486 (6th Cir. 2004).

### 1. Breach of Fiduciary Duty by the Disability Board

The Plan provides that "[t]he Disability Board will be the 'named fiduciary' of the Plan . . . and will be responsible for implementing and administering the Plan, subject to the terms of the Plan and Trust." Disability Plan Art. 9.2. It states that the Disability Board "will have full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan and the Trust." Id. And it names the Disability Board as the "administrator" of the Plan. Disability Plan Art. 1.2.

taking the action subject to complaint. The Court finds that he has not done so.

ERISA "establish[es] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and . . . provid[es] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Under the statute, employers **[*9]** and third-party administrators who manage welfare benefit plans for employees and beneficiaries "act with the highest fiduciary duty known to the law." Haviland v. Metro. Life Ins. Co., 730 F.3d 563, 575 (6th Cir. 2013). Based on the statutory language, the Sixth Circuit has recognized three components of ERISA's fiduciary duty. Berlin v. Mich. Bell Tel. Co., 858 F.2d 1154, 1162 (6th Cir. 1988). The first is a duty of loyalty, which requires that "all decisions regarding an ERISA plan . . . be made with an eye single to the interests of the participants and beneficiaries." James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 448 (6th Cir. 2002) (punctuation modified). The second is a "prudent person fiduciary obligation," which requires that "a plan fiduciary exercise his or her duties with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances." Id. (punctuation modified). The prudent person standard, combined with the duty of loyalty, "imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." Berlin, 858 F.2d at 1162 (punctuation modified). The third component is "a duty to act for the exclusive purpose of proving benefits to plan participants." James, 305 F.3d at 449.

Johnson alleges that the Disability Board breached these duties **[*10]** by failing to disclose to him the existence of the Disability Plan, his eligibility under the Plan, or the extent of benefits under the Plan. Compl. ¶ 37.

The Disability Plan and the Disability Board contend that it did not owe, and could not have breached, a duty to inform Johnson that benefits existed because the Disability Plan was not created until 1993—about three years after Johnson retired—and did not offer LOD benefits until 2015-25 years after Johnson retired. Disability Plan and Disability Board Mot. to Dismiss at 13; Disability Plan and Disability Board Reply at 5-6; see also Disability Plan at 1 (explaining that the 1993 collective bargaining agreement between the NFLPA and the NFLMC provided for the establishment of a plan to provide supplemental disability benefits to certain NFL players and stating that this plan was amended and eventually renamed the "NFL Player Disability & Neurocognitive Benefit Plan"); id. at Art. 5.1 (explaining that the Plan began offering monthly LOD disability benefits beginning January 1, 2015).

Johnson responds that, with the allegations that he received treatment, surgery, and physical therapy with the Lions and was paid after his injury, there **[*11]** are factual questions regarding which LOD benefits existed when he was injured and whether he was entitled to them. Resp. at 16. He states that these factual questions can be addressed only through discovery. Id. at 16-17.

As the Disability Plan and the Disability Board note, however, what is relevant for Johnson's claim is not whether other plans existed or offered benefits to which he may have been entitled but rather whether he has sufficiently alleged that the Disability Board owed some type of duty to inform him of benefits under the Disability Plan. Johnson has

existence of a Plan or benefits under a Plan that did not exist when he retired from the NFL and that offered benefits decades after he retired.

In addition, dismissal is warranted because the complaint does not contain any facts that support a claim that the Disability Board breached a fiduciary duty by failing to disclose information to Johnson. The Sixth Circuit has held that ERISA's fiduciary duties trigger an obligation to disclose information to beneficiaries **[*12]** in certain circumstances. Chelf, 31 F.4th at 465. A fiduciary is generally not liable for failing to disclose information that it is not required to disclose because "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998). But the Sixth Circuit has recognized three circumstances in which a fiduciary has a duty to disclose even when ERISA's disclosure provisions do not expressly require it to do so. James, 305 F.3d at 453. A breach of fiduciary duty occurs in the following circumstances:

> (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider <u>on its own initiative</u> provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

Id. (emphasis in original).

Johnson has not set forth facts indicating that the Disability Board's actions fall into one of these three categories. Regarding the first category, the complaint does not contain allegations that Johnson made any **[*13]** inquiries about the Disability Plan, nor that the Disability Board provided misleading or inaccurate information in response. Instead, it alleges that "[n]either the Lions nor any of the other Defendants informed [Johnson] about any benefits, including benefits under the Plan" and that he "was not aware of . . . any benefits under the Plan prior to February 2021." Compl. ¶ 23.

Regarding the second category, the complaint does not contain allegations that the Disability Board provided misleading or inaccurate information about the future of the Disability Plan on its own initiative. The only document or communication disseminated by the Board that the complaint refers to is a plan booklet that "detailed possible injuries for which a player could submit an application for one or more injuries under the . . . LOD" and that Johnson received in February 2021. Compl. ¶ 26. 4 Johnson does not allege that this plan booklet provided misleading or inaccurate information.

Regarding the third category, the complaint does not contain allegations that ERISA or its implementing regulations required Johnson's employer to forecast the future, and his employer cannot be faulted for failing to do so. **[*14]** Thus, none of the circumstances in which a fiduciary may be liable for failure to disclose are present here.

In his complaint and his response, Johnson relies on Krohn v. Huron Memorial Hospital, 173 F.3d 542, 545 (6th Cir. 1999) for the proposition that, under ERISA, material

involved a plan participant's affirmative requests for information. 173 F.3d at 547-548. There, the court held that a plan administrator breached its fiduciary duty to inform a plan participant about the existence and availability of long-term benefits because it failed to "give complete and accurate information in response to" a participant's questions about benefits coverage. Krohn, 173 F.3d at 550 (punctuation modified). In reaching its conclusion, the court emphasized that the plaintiff's employer "received notice repeatedly that the plaintiff would be eligible for and would need long-term disability benefits" and knew that, to secure those benefits, the plaintiff would need to submit a claim within a certain timeframe. Id. at 549. A prudent fiduciary acting in its beneficiary's best interest, it determined, would have informed the plaintiff that her failure **[*15]** to timely submit a claim would render her ineligible for benefits. Id. at 549-550. It held, therefore, that "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance." Id. at 547. The court stated that the duty to inform "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id. at 548.

The Sixth Circuit has characterized Krohn as a case that "dealt with an affirmative request for information, which was met with an affirmative omission." Vest v. Resolute FP US Inc., 905 F.3d 985, 988 (6th Cir. 2018) (affirming dismissal of the complaint when the complaint lacked specific allegations that the plaintiff requested information about benefits or communicated to the defendant an interest in maintaining benefits, and when the complaint lacked specific allegations that defendant knew about the beneficiary's health condition or knew that a specific benefit would be important to him). It has explained that subsequent caselaw applying Krohn "continues to require [a] question-and-response pattern," in which a beneficiary **[*16]** makes known his or her condition, such as by initiating an inquiry about benefits, and the fiduciary provides some response. Id.; see also Tullis v. UMB Bank, N.A., 640 F. Supp. 2d 974, 982 (N.D. Ohio 2009) ("[A]ll of the cases in which a fiduciary was found to have an affirmative obligation to disclose information first involved an inquiry initiated by a plan participant.").

Johnson's factual allegations do not have these features. He does not allege that he inquired about or requested information about benefits. And his complaint contains no specific facts indicating that the Disability Board knew that LOD benefits would be important to him. Johnson points to his allegations that the Lions knew about his knee injury. See Resp. at 22-23. But these allegations do not indicate that the Disability Board knew that Johnson would have an interest in LOD benefits or knew that Johnson was unaware that he may be eligible for benefits. Therefore, nothing suggests that the Disability Board knew that "silence might be harmful." Krohn, 173 F.3d at 548.

The Disability Board and the Disability Plan are entitled to dismissal of Johnson's breach of fiduciary duty claim. 5

### 2. Breach of Fiduciary Duty by the NFLMC and the NFLPA

Defendants were "de facto" fiduciaries when failing to inform him of the existence of the plan, eligibility under the plan, or the extent of benefits under the plan. Cataldo, 676 F.3d at 552; Compl. ¶ 37. A "de facto fiduciary" is anyone who "exercises discretionary control or authority over a plan's management, administration, or assets." Moore, 458 F.3d at 438. The Court finds that the complaint lacks specific allegations that permit the reasonable inference that the NFLMC or the NFLPA were de facto fiduciaries when they allegedly failed to disclose.

The complaint does not contain facts indicating that either entity "exercise[d] any discretionary authority or discretionary control respecting management" of the Plan, directed the "disposition of assets" under the Plan, "render[ed] investment advice" related to the Plan, or "ha[d] any discretionary authority or discretionary responsibility" in administration of the Plan. 29 U.S.C. § 1002(21)(A).

In his response, Johnson presents multiple arguments that the NFLMC and the NFLPA are de facto fiduciaries, but these arguments fail.

### a. Members of the Disability Board

Johnson states that the NFLMC and the NFLPA are fiduciaries [*18] because they "make up the Disability Board that decides who is eligible and will receive benefits as Plan Administrators." Resp. at 19; see also id. at 21-22 (contending that the complaint permits the reasonable inference that the NFLPA has discretionary authority over disclosing information and denying benefits because "they are members of the Disability Board"). But the NFLMC and the NFLPA do not themselves make up the Disability Board. Rather, they appoint and remove members of the Board. See Disability Plan Art. 9.1.

### b. Appointment and Removal Powers

In addition, Johnson contends that the NFLMC and the NFLPA are fiduciaries "[b]y virtue of th[e] powers to appoint and remove other fiduciaries," which are the Retirement Board and the Disability Board. Resp. at 6. But courts have held that the power to appoint and remove plan administrators is insufficient to make an entity a de facto fiduciary. See Briscoe, 444 F.3d at 487-488 (rejecting plaintiffs' argument that defendants were "functional fiduciaries because they selected and retained the plan administrators" and finding that, with this authority, defendants did not exercise discretionary authority regarding the administration of the plan or any control over [*19] the assets of the plan); In re Morgan Stanley ERISA Litigation, 696 F. Supp. 2d 345, 356 (S.D.N.Y. 2009) (stating that "[t]he right to appoint and remove fiduciaries is insufficient to constitute fiduciary status"); In re Worldcom, Inc., 263 F. Supp. 2d 745, 760-761 (S.D.N.Y. 2003) (noting that plaintiffs' argument that individuals who held the authority to appoint and remove plan fiduciaries are, therefore, themselves fiduciaries "goes too far" because "[i]t would make any supervisor of an ERISA fiduciary also an ERISA fiduciary").

3/7/23, 12:05 AM	Case 2:22-cv-13070-MAG-CI   ECF No. 31-7, PageID.449   Filed 03/07/23   Page 10 of 16
Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

Document:	Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

discretionary control over an ERISA plan. See Hudson v. Nat'l Football League Mgmt. Council, No. 18-cv-04483, 2019 WL 5722220, at *16 (S.D.N.Y. Sept. 5, 2019) (report and recommendation), adopted as modified, 2019 U.S. Dist. LEXIS 170114, 2019 WL 4784680 (Sept. 30, 2019). In Hudson, a former NFL player whose claim to have his disability benefits reclassified was denied brought an ERISA action against the NFLMC and the NFLPA. Id. at *1. He alleged in part that the Retirement Board, which had final decision-making authority about an NFL player's benefit category, made inadequate disclosures to plan participants about their benefits and that the NFLMC and the NFLPA breached their fiduciary duty by failing to monitor the actions of Retirement Board members whom they appointed. Id. at *14-*15. Like Johnson, the plaintiff argued that the NFLMC and **[*20]** the NFLPA were fiduciaries with liability for the substantive decisions of the Retirement Board "[b]y virtue of [their] powers to appoint and remove other fiduciaries." Id. at *16, *18.

The court, however, found that "the mere ability to appoint or remove trustees to the board of a retirement plan is insufficient to establish broader fiduciary liability for the trustees' substantive decisions." Id. at *16. And the appointment and removal power did not give the NFLMC or the NFLPA power to substantively interpret, apply, or enforce provisions of the Plan. Id. at *17 n.12. The court explained that in multiemployer plans, the Labor Management Relations Act prohibits an appointing party from directing or supervising the decisions of independent board members. Id. at *16, *19; see also N.L.R.B. v. Amax Coal Co., 453 U.S. 322, 330, 101 S. Ct. 2789, 69 L. Ed. 2d 672 (1981) (interpreting the statute to mean that an employer who appoints a representative to the board of trustees of a retirement plan may not direct or supervise the decisions of a trustee he or she has appointed). According to the court, "[a]t most, appointing parties have only a limited fiduciary obligation[ ] . . . to ensure that the appointees are performing their fiduciary functions such as attending meetings and voting." Id. at *16 (punctuation modified).

Because the mere fact that the NFLMC and NFLPA **[*21]** could appoint and remove members of the board was insufficient to make them fiduciaries for purposes of benefit reclassification decisions and because the complaint failed to allege any facts establishing that these entities possessed or exercised broader powers, the court dismissed the plaintiff's breach of fiduciary duty claims against them. Id. at *16-*17 (noting that "there is no support in the Plan itself, or in any of the factual allegations in the Complaint, that the [NFLMC] has the responsibility to supervise, evaluate, or second-guess the substantive decisions of their selected members of the Retirement Board."); id. at *19 (explaining that "[w]ithout discretion over the Plan's "management . . . [or] administration . . . the [NFLPA] did not have the unilateral ability to revise the Plan or affect particular decisions under the Plan for an individual such as Hudson, even if [it] wanted to intervene in Hudson's reclassification request").

The reasoning in Hudson applies here. The NFLMC and the NFLPA do not have discretionary authority regarding how to disclose information about the Disability Plan—the duty at issue in this case—because they have the discretionary authority to appoint or remove voting members **[*22]** of the Disability Board. Johnson's complaint does not contain facts indicating that either entity was involved in managing or administering the

3/7/23, 12:05 AM Case 2:22-cv-13070-MAG-CI ECF No. 31-7, PageID.459 Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580 Filed 03/07/23 Page 11 of 16

Document: Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

do possess—appointing or removing voting members of the Disability Board and members of the Disability Initial Claims Committee.

### c. Duty to Monitor

Johnson also tries to impute fiduciary status to Defendants through the duty to monitor. He asserts that, because of their appointment and removal powers, Defendants "had the fiduciary responsibility to monitor their fiduciary appointees and to take actions only in the best interests of participants and remedy any fiduciary violations." Resp. at 6.

Courts have held that "[t]he power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance." Stockwell v. Hamilton, 163 F. Supp. 3d 484, 491 (E.D. Mich. 2016) (punctuation modified). Further, "[t]he duty to monitor carries with it . . . the duty to take action upon discovery that the appointed fiduciaries are not performing properly." Id. (punctuation modified). But the complaint does not allege that Defendants [*23] failed to monitor those whom they appointed to the Disability Board or failed to take action upon discovering that members of the Disability Board were not performing properly. Instead, Johnson refers to the duty to monitor for the first time in his response to Defendants' motions to dismiss.

Moreover, "most courts treat a duty to monitor claim as deriving from a successful claim of a breach of fiduciary duty." Parker v. GKN N. Am. Servs. Inc., No. 21-12468, 2022 U.S. Dist. LEXIS 154358, 2022 WL 3702072, at *6 (E.D. Mich. Aug. 26, 2022) ("If a breach of fiduciary duty claim survives so too does the claim for failure to monitor."); see also Majad ex rel. Nokia Retirement Savings & Investment Plan v. Nokia, Inc., 528 F. App'x 52, 57 (2d Cir. 2013) (rejecting plaintiffs' claims for failure to monitor retirement plan where there was no underlying ERISA breach of fiduciary duty claim); Dover v. Yanfeng US Automotive Int. Sys. I LLC, 563 F. Supp. 3d 678, 690 (E.D. Mich. 2021) ("Because a claim that certain Defendants failed to monitor the imprudent or disloyal actions of others requires a preliminary finding of breach of those duties, courts generally treat a 'failure to monitor' claim as rising or falling with a breach of duty claim."); In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig., 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) ("A claim for breach of the duty to monitor requires an antecedent breach to be viable . . . With no antecedent breach by the monitored parties in this case, Defendants' alleged failure to monitor, even if true, could not have harmed the plaintiffs. Therefore, the ERISA Plaintiffs' [*24] duty to monitor claim fails."). Johnson has not plausibly alleged a breach of fiduciary duty by the Disability Board. Therefore, a failure to monitor claim against the NFLMC or NFLPA would fail.

The NFLPA and the NFLMC are entitled to dismissal of Johnson's breach of fiduciary duty claim.

### 3. Breach of Fiduciary Duty by the Lions

3/7/23, 12:05 AM    Case 2:22-cv-13070-MAG-CI   ECF No. 31-7, PageID.451   Filed 03/07/23   Page 12 of 16
Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

Document:                    Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

discretionary control or authority over the Disability Plan's management, administration, or assets, so they also cannot be seen as a de facto fiduciary. Moore, 458 F.3d at 438.

Johnson contends that the complaint draws the reasonable inference that the Lions failed to alert his disability insurer or the Disability Plan of his injury when the Lions told him he was "on his own" for his injury. Resp. at 19. He also states that there are factual questions as to whom the Lions spoke with and what the Lions discussed regarding benefits. Id. But these events occurred in 1989 and 1990. See Compl. ¶¶ 14-21. Johnson acknowledges that the Disability Plan did not provide LOD benefits to eligible NFL players until 2015, and the Disability **[*25]** Plan, which is attached to the complaint, states this. See Resp. at 4; Disability Plan at Art. 5.1.

Johnson has not sufficiently alleged that the Lions is a de facto fiduciary with respect to the disclosure of information about the Disability Plan. The Lions is entitled to dismissal of the breach of fiduciary duty claim.

### B. Claim for Benefits

In addition to his breach of fiduciary duty claim, Johnson brings a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that the denial of benefits was "in direct violation of the terms of the Plan" and that Defendants "abused their discretion by denying [his] benefits under the Plan as untimely when the cause of the untimeliness was Defendants['] breach of their fiduciary duty to inform Plaintiff that the Plan existed." Compl. ¶¶ 40-41.

The Court finds that Defendants are entitled to dismissal of this claim because the Lions, the NFLMC, and the NFLPA are not proper defendants in an action seeking benefits and because the allegations establish that Johnson's application for benefits was untimely under the terms of the Disability Plan.

#### 1. Proper Defendants in an Action Seeking Benefits

ERISA provides that a participant or beneficiary may bring an action "to recover **[*26]** benefits due to [him or her] under the terms of [the] plan, to enforce [his or her] rights under the terms of the plan, or to clarify [his or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Sixth Circuit has held that "[u]nless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988). As noted, the Disability Plan provides that the Disability Board has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan and the Trust." Disability Plan Art. 9.2. It also states that, with the exception of initial claims for disability benefits, which are decided by the Disability Initial Claims Committee, the Disability Board's authority includes deciding claims for benefits. Id.

3/7/23, 12:05 AM

Case 2:22-cv-13070-MAG-CI   ECF No. 31-7, PageID.452   Filed 03/07/23   Page 13 of 16

Document:   Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

even were involved in the denial of benefits. See Lions Mot. to Dismiss at 12-13; NFLMC Mot. to Dismiss at 14-15. Johnson argues that the complaint permits the inference that, as an administrator of the Disability **[*27]** Plan and member of the Disability Board, the NFLMC and the NFLPA have discretion to decide whether an applicant is entitled to benefits. Resp. at 23-24. But, as discussed, neither entity is a member of the Disability Board or an administrator of the Disability Plan. Instead, these entities have the power to appoint and remove members of the Disability Board. Johnson also argues that the complaint permits the inference that the Lions "made the decision in denial of the original benefits since they told him that he was 'on his own' and that he 'should seek personal treatment.'" Id. at 24. But the Lions' actions occurred in 1989 and 1990, and Johnson's claim is based on the denial of LOD benefits under the Disability Plan, which he acknowledges did not begin to provide LOD benefits until 2015.

The complaint does not contain allegations supporting the conclusion that, either through appointment and removal powers or through any other means, the NFLMC, the NFLPA, or the Lions controlled the administration of the Disability Plan. Therefore, dismissal is appropriate as to these Defendants. See Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 842 (6th Cir. 2007) (finding that defendant could not be sued under 29 U.S.C. § 1132(a)(1)(B) when it was not responsible for the denial of benefits); **[*28]** Moore, 458 F.3d at 438 (finding that defendant was not a proper party for plaintiff's denial of benefits claim and affirming dismissal of claim when defendant did not make a decision regarding plaintiff's benefits). 6⬇

### 2. The Disability Plan's Application Deadline

Johnson's claim for benefits against all Defendants is subject to dismissal because he has not plausibly alleged that he is entitled to benefits, given the application deadline established in the Disability Plan itself. The Disability Plan sets the following deadline for submitting a claim for LOD benefits: "[a]ny claim for line-of-duty disability benefits must be submitted in writing to the Disability Board within forty-eight months after a Player ceases to be an Active Player." Disability Plan Art. 5.4. Johnson submitted his application approximately 20 years after he ceased being an active player in the NFL. See Compl. ¶ 22 (alleging that Johnson retired from the NFL in or around 1990); id. ¶ 27 (alleging that Johnson submitted a claim for benefits under the Disability Plan in or around March 2021). Because the allegations establish that Johnson's claim was untimely under the terms of the Disability Plan, he has not stated a plausible claim for **[*29]** benefits. All Defendants are entitled to dismissal of the claim. 7⬇

### III. CONCLUSION

For the reasons set forth above, the Court grants the motions to dismiss filed by the NFL Player Disability, Neurocognitive & Death Benefit Plan and the NFL Player Disability, Neurocognitive & Death Benefit Board (Dkt. 29), the National Football League

3/7/23, 12:05 AM  Case 2:22-cv-13070-MAG-CI   ECF No. 31-7, PageID.458   Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580  Filed 03/07/23   Page 14 of 16

Document:                Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

SO ORDERED.

Dated: February 16, 2023

Detroit, Michigan

/s/ Mark A. Goldsmith

MARK A. GOLDSMITH

United States District Judge

## JUDGMENT

Judgment is entered in accordance with the Opinion and Order entered on today's date. The case is closed.

APPROVED:

/s/ Mark A. Goldsmith

MARK A. GOLDSMITH

UNITED STATES DISTRICT JUDGE

Dated: February 16, 2023

---

**Footnotes**

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the four motions, the briefing includes Plaintiff Kelley Johnson's response (Dkt. 32); Defendant National Football League Players Association's reply (Dkt. 35); Defendants NFL Player Disability, Neurocognitive & Death Benefit Plan and NFL Player Disability, Neurocognitive & Death Benefit Board's reply (Dkt. 36); Defendant the Detroit Lions, Inc.'s reply (Dkt. 37); and Defendant National Football League Management Council's reply (Dkt. 38).

[2] The Disability Plan is attached and referred to in the complaint, and it is central to the claims. Therefore, the Court may consider the Plan without converting the motion to dismiss to a motion for summary judgment. See Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached . . . so long as they are referred to in the Complaint and are central to the claims contained therein.").

to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

[4] Johnson refers to a letter that stated that he would be receiving dental and vision benefits in 2019, but this letter was sent by the Pro Football Retired Players Association and, therefore, is not a document or communication disseminated by the Disability Board on its own initiative that failed to include material information or materially misled Johnson. See Compl. ¶ 25.

[5] The Disability Board and the Disability Plan, in addition to the NFLMC and the Lions, also argue that Johnson's claim is time-barred under ERISA's statute of limitations. Disability Plan and Disability Board Mot. to Dismiss at 14-17; NFLMC Mot. to Dismiss at 11-13; Lions Mot. to Dismiss at 13. Because the Court finds that Defendants are entitled to dismissal of the claim on other grounds, it need not address this argument.

[6] Johnson also argues that Defendants should be estopped from denying benefits under the Plan because the complaint permits the inference that none of the Defendants provided him with a copy of the Disability Plan, and this this failure to provide constitutes a failure to inform him of his benefits. Resp. at 24. For this proposition, he cites Shelby Cnty. HealthCare Corp. v. S. Council Indus. Workers Health and Welfare Tr. Fund, 203 F.3d 926, 930 (6th Cir. 1999). But that case involved an alleged violation of 29 U.S.C. § 1132(c)(1), which governs an administrator's failure or refusal to provide requested information. Shelby Cnty. HealthCare Corp., 203 F.3d at 930. Johnson does not bring a claim under this provision, and he does not allege that he requested information about the Disability Plan and that Defendants failed or refused to respond.

[7] The Disability Board and the Disability Plan contend that Johnson's claim for benefits should also be dismissed because, even if it were timely, Johnson does meet minimum pleading standards, as he does not reference the eligibility requirements for LOD benefits or allege that he meets those requirements. Disability Plan and Disability Board Mot. to Dismiss at 12-13; Disability Plan and Disability Board Reply at 2-3. Because the Court finds that Defendants are entitled to dismissal of the claim on other grounds, it need not address this argument.

3/7/23, 12:05 AM                                                                  Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580

Case 2:22-cv-13070-MAG-CI   ECF No. 31-7, PageID.455   Filed 03/07/23   Page 16 of 16

Document:            Johnson v. Disability, 2023 U.S. Dist. LEXIS 26580



About            Cookie Policy

Privacy Policy   Terms & Conditions            Copyright © 2023 LexisNexis.

