UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

    Plaintiff,        Case No. 22-13070

vs.             HON. MARK A. GOLDSMITH

MICHAEL J. BOUCHARD, et al.,

      Defendants.

_____/

**OPINION & ORDER
(1) ACCEPTING 3/23/23 REPORT AND RECOMMENDATION (R&R) (Dkt. 41),
(2) OVERRULING PLAINTIFF'S OBJECTIONS TO 3/23/23 R&R (Dkt. 42),
(3) GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 26), (4) DENYING
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (Dkt. 3), (5)
ACCEPTING 1/3/23 R&R (Dkt. 13), (6) DENYING AS MOOT PLAINTIFF'S MOTION
FOR RECONSIDERATION (Dkt. 35), AND (7) DENYING PLAINTIFF'S MOTION TO
DISQUALIFY (Dkt. 29)**

   Plaintiff Scott Witzke brings this suit against Defendant Michael Bouchard, sheriff for

Oakland County, Michigan; Thomas Vida, Jr., a captain with the Oakland County Jail (OCJ); and

an unidentified employee of Oakland County based on allegations that they blocked Witzke's

ability to communicate with detainees incarcerated at OCJ. Before the Court are (i) Magistrate

Judge Curtis Ivy, Jr.'s January 3, 2023 report and recommendation (R&R) (Dkt. 13)

recommending a denial of Witze's motion for a temporary restraining order (Dkt. 3), to which

Witzke filed objections (Dkt. 23); (ii) the magistrate judge's March 23, 2023 R&R (Dkt. 41)

recommending a grant of Defendants' motion to dismiss (Dkt. 26), to which Witzke filed

objections (Dkt. 42); (iii) Witzke's motion for reconsideration (Dkt. 35) of this Court's order (Dkt.

34) directing Defendants to respond to Witzke's objections to the magistrate judge's January 3,

2023 R&R; and (iv) Witzke's motion to disqualify the undersigned (Dkt. 29).

   For the reasons that follow, the Court (i) accepts the recommendations in the March 23,

2023 R&R, (ii) overrules Witzke's objections to that R&R, (iii) grants Defendants' motion to

dismiss, (iv) denies Witzke's motion for a temporary restraining order, based on the granting of the motion to dismiss, thereby adopting the recommendation of the magistrate judge's January 3, 2023 R&R recommending denial of Witzke's motion for a temporary restraining order, (v) denies as moot Witzke's motion for reconsideration, and (vi) denies Witzke's motion to disqualify.[1]

## I.  BACKGROUND

Witzke has an apparent interest in communicating with detainees at OCJ, though he makes no representations to this Court as to why he seeks these communications.  In Defendants' view, Witzke—who is not a licensed attorney—has been contacting OCJ detainees to offer his services "providing quality legal research assistance and the drafting and formatting [of] documents."  Br. in Supp. Mot. to Dismiss at 2 (quoting 12/13/22 Witzke Email (Dkt. 26-5) (reflecting Witzke's own description of his interest in contacting OCJ detainees in email addressed to Bouchard and Vida)).

Witzke alleges in his complaint that "[a]ll written communications with OCJ detainees must be done either through traditional 'snail mail' (U.S. Postal Service) or electronically through 'Smart Communication[s],' which is a company contracted with by OCJ for both electronic and telephone communications."  Compl. ¶ 10 (Dkt. 1).

Witzke alleges that he created an account with Smart Communications, but in December 2022, he received a notice that his account had been disabled:

Viewing messages from inmates at Oakland County Jail has been disabled.

For the following reason: Inmate is committing a crime by acting as an attorney and charging other inmates to file briefs. Inmate is NOT an attorney.  Prosecutors

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the identified filings, the briefing includes Witzke's response to Defendants' motion to dismiss (Dkt. 31), Defendants' reply (Dkt. 39), Defendants' response to Witzke's objections to the March 23, 2023 R&R (Dkt. 43), Defendants' response to Witzke's motion to disqualify (Dkt. 32), and Witzke's reply in support of that motion (Dkt. 33).

Office has filed a contempt of court motion in front of Judge Polis [sic] and SCAO [State Court Administrative Office].

Id. ¶ 13.

Witzke alleges that, because his account was disabled, he cannot access electronic messages from OCJ detainees, and his telephone number was "blocked," preventing Witzke from receiving telephonic communications from OCJ detainees.  Id. ¶¶ 14–15.  Witzke submits that Defendants did not "contact[]" him or "offer[] any form of hearing" before disabling his communications with OCJ detainees.  Id. ¶ 16.

Defendants submit that the OCJ disabled Witzke's use of Smart Communications in response to Witzke's improper filing in Oakland County Circuit Court of a "motion to quash" on behalf of Raul Contreras, who was already represented by counsel as a defendant in a criminal case, People v. Contreras, No. 20-274746-FC, before Oakland County Circuit Judge Yasmine Poles.  See Br. in Supp. Mot. to Dismiss at 1–3 (citing 12/13/22 Contreras Mot. to Quash (Dkt. 26-6) (identifying "witzkeparalaw@gmail.com" as email for Contreras and incorrectly identifying Contreras as "Defendant in pro per")).  Defendants state that Judge Poles informed OCJ staff of Witzke's improper filing, after which Vida sent a notice to his staff stating that Witzke was "restricted from having access, visits, messaging with any inmate confined in the Oakland County Jail unless that access [was] vetted and preapproved in writing by command staff."  Id. at 2–3 (quoting 12/13/22 Vida Email at PageID.223 (Dkt. 26-7) (emphasis in 12/13/22 Vida Email)).

Three days after the OCJ disabled Witzke's Smart Communications access, Judge Poles ordered Witzke to show cause why he should not be held in contempt, on the grounds that Witzke had "prepared and filed pleadings in this case while engaging in the unauthorized practice of law pursuant to MCL 600.916."  12/16/22 Contreras Order (Dkt. 26-9).  Witzke subsequently moved in Contreras for an order directing Bouchard to "permit Witzke to serve any and all legal papers which pertain to this case . . . upon Defendant Contreras . . . ."  12/26/22 Contreras Mot. to Allow

Serv. (Dkt. 26-11).  Judge Poles entered an order finding that Witzke was "prohibited from drafting and/or filing motions or other pleadings in conjunction with or on behalf of Raul Contreras in the instant case" and "prohibited from otherwise interfering with or engaging in the authorized practice of law in the instant case."  1/5/23 Contreras Order (Dkt. 26-15).  After a new attorney was appointed for Contreras, Judge Poles entered an order requiring that Contreras "have no contact with Scott Witzke, either direct or through a third party."  1/26/23 Contreras Order (Dkt. 26-18).

Witzke then filed a complaint in the Michigan Court of Appeals seeking a writ of superintending control to vacate Judge Poles's order prohibiting contact between Witzke and Contreras.  See In re Witzke, No. 364784, Compl. (Dkt. 26-19).  The court summarily denied that complaint in a brief order.  See 3/30/23 In re Witzke Order, No. 364784 (Dkt. 23).

Witzke now brings claims in this Court based on alleged (i) violations of the First Amendment, (ii) deprivation of due process under the Fourteenth Amendment, and (iii) defamation under Michigan law.  Compl. ¶¶ 23–28.

## II.  ANALYSIS[2]

---

[2] The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified).  Absent a specific objection, the issue is waived.  Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991).

Several motions are pending before this Court.  The Court begins by addressing the magistrate judge's recommendation that the Court grant Defendants' motion to dismiss as to Witzke's First Amendment, procedural due process, and defamation claims.

### A.  Motion to Dismiss as to Witzke's First Amendment Claim[3]

As demonstrated by the case law cited in the R&R, when assessing whether any rule or official conduct at a jail or correctional facility restricting communications with incarcerated individuals impermissibly interferes with First Amendment rights, courts consider the four factors identified in Turner v. Safley, 482 U.S. 78 (1987) to determine whether the facility's regulation is "reasonably related to legitimate penological interests."  Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) (quoting Turner, 482 U.S. at 89 (punctuation modified)).[4]  Under Turner, courts consider:

> (i) "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective," Thornburgh, 490 U.S. at 414;

> (ii) "whether there are alternative means of exercising the right that remain open to prison inmates," id. at 417 (quoting Turner, 482 U.S. at 90);

> (iii) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison," id. at 418; and

> (iv) whether there exist "obvious, easy alternatives" evidencing that "the regulation is not reasonable, but is an exaggerated response to prison concerns," id. (punctuation modified).

---

[3] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).  The defendant has the burden of showing that the plaintiff has failed to state a claim for relief.  Id.

[4] Thorburgh clarified that this standard applies not only to regulations allegedly impinging the First Amendment rights of incarcerated individuals, but also to regulations governing "the legitimate demands of those on the 'outside' who seek to enter that [prison] environment, in person or through the written word," such as attorneys, journalists, and "families and friends."  490 U.S. 401, 407, 414–418 (finding that regulation authorizing prison officials to reject incoming publications considered detrimental to institutional security did not violate publishers' First Amendment rights).

Noting that Witzke "does not . . . allege that he cannot communicate with detainees via alternative means such as mail through the United State Postal Service, or . . . visit[ing] detainees in person," the magistrate judge emphasizes that, under the second <u>Turner</u> factor, Witzke has alternative means of communicating with OCJ detainees besides using the Smart Communications platform. <u>See</u> 3/23/23 R&R at 10–13. On this basis, the magistrate judge recommends a dismissal of Witzke's First Amendment claim. <u>Id.</u> at 13.

Witzke lists five objections to this recommendation. Two of these objections appear to argue that the <u>Turner</u> inquiry is not the appropriate standard, while the remaining three objections appear to argue that the magistrate judged applied <u>Turner</u> incorrectly. The Court addresses these arguments in turn.

### 1. Appropriateness of <u>Turner</u> Standard

The magistrate judge and Defendants agree that the <u>Turner</u> standard applies here. <u>See</u> 3/23/23 R&R at 11; Br. in Supp. Mot. to Dismiss at 18–19. Apparently contradicting his position that this standard is inapplicable, Witzke cites <u>Thornburgh</u> and <u>Turner</u> to support his position that he has a plausible First Amendment claim. <u>See, e.g.</u>, Obj. to 3/23/23 R&R at 15–16. However, Witzke also asserts objections indicating that he believes some other, non-specified standard should apply. The Court considers and rejects these objections.

### a. Objection 4: Challenge to Jail Conduct Rather Than Jail Rule[5]

Witzke asserts that he "makes no challenge to the existing rules or regulations," and so in his view, "there is nothing for the Court to consider with respect to their validity as understood by <u>Turner</u> or <u>Thornburgh</u>." <u>Id.</u> at 16 (citing <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974)).

---

[5] The Court identifies Witzke's objections by the numbering he uses, but it addresses those objections in a different order than Witzke presents them.

To the extent that Witzke suggests that the <u>Turner</u> test does not apply because he frames his action as a challenge to his individual treatment at the hands of OCJ officials, rather than the enforcement of a broadly applicable regulation, Witzke is mistaken. Where a plaintiff alleges that a jail official has interfered with communications between incarcerated individuals and those on the outside—even when the official is not applying a particular rule or regulation—courts apply the <u>Turner</u> factors. <u>See, e.g.</u>, <u>Everheart v. Bryane</u>, No. 1:17-cv-351, 2018 WL 475005, at *2–*3 (E.D. Tenn. Jan. 18, 2018) (applying <u>Turner</u> analysis to—and rejecting—claim that denial of opportunity to visit detainee when incarcerated plaintiff's family properly arrived during visitation hours violated First Amendment rights); <u>see also</u> <u>Smith v. Weers</u>, No. 1:15-cv-42, 2015 WL 6738668, at *5 (W.D. Mich. Nov. 4, 2015) (applying <u>Turner</u> and finding no First Amendment violation based on incarcerated individual's loss of privileges, including restrictions on phone use, resulting from incarcerated plaintiff's misconduct); <u>East v. Nez Perce Cnty. Sheriff's Dep't</u>, No. 1:20-cv-00260-DCN, 2020 WL 5961091, at *8 (D. Idaho Oct. 7, 2020) (stating that <u>Turner</u> applies to First Amendment challenge to "a prison regulation <u>or official action</u>") (emphasis added).

Witzke appears to argue that a different standard applies, because after asserting that the Court has "nothing to consider" under <u>Turner</u> or <u>Thornburgh</u>, he cites <u>Martinez</u> for the broad principle that there is a "clearly established [] First Amendment right of non-prisoners to <u>communicate</u> with prisoners." Obj. to 3/23/23 R&R at 16 (emphasis in original) (citing <u>Martinez</u>, 416 U.S. at 408 ("[I]t is plain that [an outsider's] interest [in corresponding with person inside prison] is grounded in the First Amendment's guarantee of freedom of speech.")). This broad position does not contradict the R&R, which applies <u>Turner</u> on the assumption that Witzke has some First Amendment interest in communicating with OCJ detainees. <u>See</u> 3/23/23 R&R at 10–12.

In any case, Witzke is incorrect to the extent that he suggests that <u>Martinez</u> provides the proper analytical standard to be used in place of <u>Turner</u>.   <u>Martinez</u> found a First Amendment violation where prison regulations allowed officials to censor mail sent by prisoners, utilizing an analysis that the prison had to show a "substantial government interest" and a limitation on First Amendment freedom that was "no greater than necessary" to protect the governmental interest. 416 U.S. at 413.  The Supreme Court has since clarified that <u>Turner</u>—not <u>Martinez</u>—provides the proper standard for assessing outsiders' First Amendment challenges to restrictions on communications with incarcerated individuals.  <u>Thornburgh</u>, 490 U.S. at 403–404 (finding that district court properly applied <u>Turner</u> instead of <u>Martinez</u> to publishers' challenge to restrictions on publications sent to prison).[6]  Since the issuance of <u>Thornburgh</u>, courts have applied <u>Turner</u> where—as here—outsiders who seek to communicate with incarcerated individuals assert violations of the First Amendment.  <u>See, e.g.</u>, <u>Hanrahan v. Mohr</u>, 905 F.3d 947, 958–960 (6th Cir. 2018).  Without a meritorious objection from Witzke, this Court will do the same.

The Court rejects Witzke's objection that <u>Turner</u> does not apply here based on his theory that he is not challenging a particular rule or that <u>Martinez</u> supplies the proper standard.

### b.  Objection 5: Government-Established Forum

The magistrate judge views Witzke's argument about the Smart Communications platform being a "government-established forum" as an argument that some standard other than <u>Turner</u> should be applied. 3/23/23 R&R at 12–13.  He further finds that Witzke's argument fails because he has not established that the Smart Communications platform is "a government-established forum," observing that this case concerns "private communication between two individuals."  <u>Id</u>.

---

[6] <u>Thornburgh</u> also expressly narrowed <u>Martinez</u> in a key respect by rejecting an interpretation of <u>Martinez</u> that would "subject[] the decisions of prison officials to a strict 'least restrictive means' test" and by reaffirming the applicability of <u>Turner</u>'s "reasonableness" standard.  490 U.S. at 411.

The magistrate judge concludes that Witzke has failed to establish that some standard other than the Turner inquiry applies to the present case.  Id.

Witzke objects to the finding that Smart Communications is not a government-established forum, insisting that "[t]his sort of governmental designation of a place or channel of communication for use by the public is more than sufficient to create a forum for speech."  See Obj. to 3/23/23 R&R at 19–21 (quoting Davison v. Loudoun Cnty. Bd. of Supervisors, 267 F. Supp. 3d 702, 716–717 (E.D. Va. 2017), aff'd sub nom. Davison v. Randall, 912 F.3d 666 (4th Cir. 2019), as amended (Jan. 9, 2019) (finding that chair of county board's Facebook page constituted forum for speech but declining to specify which type of forum because viewpoint discrimination is prohibited no matter the category) (punctuation modified)).

It is not clear how Witzke thinks this argument affects the analysis of his First Amendment claim.  He does not identify the category of forum into which he thinks Smart Communications falls; instead, he asserts that, because the platform is "government-established," "an appropriate First Amendment analysis is relevant here."  Obj. to 3/23/23 R&R at 20.  The Court interprets Witzke's objection as a suggestion that some stricter standard than Turner applies on the theory that Smart Communications is a government-established forum.

As demonstrated by the case law cited by Witzke, see Obj. to 3/23/23 R&R at 19–21, courts recognize three types of forums for speech:

> (1) a public forum, "which by long tradition or government fiat has been devoted to assembly and debate" and within which "the rights of the state to limit expressive activity are sharply circumscribed"; (2) a "limited" or "designated" public forum, which is opened "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects"; and (3) a nonpublic forum, access to which may be regulated based on "subject matter and speaker identity" so long as such distinctions are reasonable and viewpoint neutral.

Blackwell v. City of Inkster, 596 F. Supp. 3d 906, 917 (E.D. Mich. 2022) (quoting Kincaid v. Gibson, 236 F.3d 342, 348 (6th Cir. 2001)).

Witzke alleges that Smart Communications is a system which requires individuals to create accounts to exchange "electronic and telephone communications" with OCJ detainees.  Compl. ¶¶ 10–11.  Witzke makes no allegations that Smart Communications is a platform on which individuals freely post statements that are broadly accessible to a community of viewers, as one might do on an internet blog.  Smart Communications serves as a network through which individuals can send messages to or connect calls with other individuals—somewhat akin to an email network limited to a community of individuals associated with OCJ and their personal contacts.  If the Court assumes that this network is a forum for speech, as Witzke insists without further specification, then it is a nonpublic forum.[7]  Smart Communications essentially provides an electronic method for people inside a jail to communicate, and a "jail" is a "nonpublic forum[]" where the government has "greater freedom to restrict speech."  Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp., 978 F.3d 481, 491 (6th Cir. 2020).

Thus, Smart Communications sets up a nonpublic forum through which OCJ detainees can communicate with people on the outside and with other members of the OCJ community.  See id.; Hrdlicka v. Reniff, 631 F.3d 1044, 1050 (9th Cir. 2011) (observing that "a prison is a non-public forum").  When determining whether a facility's regulations on communications satisfy the First Amendment in such a nonpublic forum, courts apply the Turner factors.  See, e.g., Hrdlicka, 631

---

[7] See, e.g., Collins v. Putt, No. 3:17-cv-01621, 2019 WL 8501541, at *3–*4 (D. Conn. Mar. 28, 2019), aff'd, 979 F.3d 128 (2d Cir. 2020) (finding that "Blackboard" website used by members of university class was "a nonpublic forum because it [was] only accessible to students enrolled in communications 101, the instructor, and school administrators"); McClure v. Am. Fam. Mut. Ins. Co., 29 F. Supp. 2d 1046, 1056 (D. Minn. 1998), aff'd, 223 F.3d 845 (8th Cir. 2000) (observing that "electronic mail" is a "nonpublic for[um]"); Loving v. Boren, 956 F. Supp. 953, 955 (W.D. Okla. 1997), aff'd, 133 F.3d 771 (10th Cir. 1998) (finding that university's "computer and Internet services d[id] not constitute a public forum" and that policy restricting unapproved outsiders' access to server "m[et] constitutional requirements"); see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 46–49 (1983) (finding that "interschool mail system" was nonpublic forum where "there [was] no indication in the record that the school mailboxes and interschool delivery system [were] open for use by the general public," even though some outside organizations and not others were allowed access).

F.3d at 1049 ("Whether the First Amendment interest in unsolicited communication with inmates gives rise to a First Amendment right [] implicates very different concerns from such communication in public fora. The Supreme Court's opinion in <u>Turner</u> addresses precisely those concerns."); <u>Austin v. Hopper</u>, 15 F. Supp. 2d 1210, 1235 n.91, 1233 (M.D. Ala. 1998) (observing that prison is nonpublic forum and applying <u>Turner</u> test to First Amendment challenge to prison's visitation policy). This Court applies that standard here.

The Court rejects Witzke's objection to the extent that he suggests that some standard other than <u>Turner</u> applies because Smart Communications creates a government-established forum.

Finding that Witzke's arguments that the <u>Turner</u> test does not apply lack merit, the Court proceeds by considering Witzke's objections on the application of <u>Turner</u>.

### 2.  Application of <u>Turner</u>

Witzke objects to the magistrate judge's application of the <u>Turner</u> test—in particular, the magistrate judge's recommended finding that Witzke has alternative means of communicating with incarcerated individuals besides the use of Smart Communications.

### a.  Objections 2 and 3: Availability of Alternative Means of Communication

In recommending a dismissal of Witzke's First Amendment claims, the magistrate judge notes that the second <u>Turner</u> factor weighs against Witzke because he has not "allege[d] that he cannot communicate with detainees via alternative means such as mail through the United States Postal Service, or . . . visit[ing] detainees in person." 3/23/23 R&R at 12.

Witzke accuses the magistrate judge of "impos[ing] a new pleading requirement." Obj. to 3/23/23 R&R at 15. But Witzke is incorrect to suggest that consideration of Witzke's pleading on

the availability of other means of methods of communication is improper. To assess the constitutionality of the practice allegedly blocking Witzke's communications with individuals at OCJ, the Court must weigh "whether there are alternative means of exercising the right that remain open . . . ." Thornburgh, 490 U.S. at 414 (punctuation modified).

Witzke also appears to deny that he has the ability to visit OCJ detainees in person. See Obj. to 3/23/23 R&R at 14 n.5. However, Witzke does not deny that he has the ability to communicate with detainees by mail. In fact, Witzke explicitly states in his complaint that mail is a separate vehicle through which individuals outside OCJ may contact OCJ detainees, independent of the Smart Communication platform. See Compl. ¶ 10 ("All written communications with OCJ detainees must be done either through traditional 'snail mail' (U.S. Postal Service) or electronically through 'Smart Communication[s]' . . . .") (emphasis added).

Additionally, though the Court relies on Witzke's pleadings for purposes of resolving his motion to dismiss, it is notable that Witzke has declined to take the position that mail is not a viable method of communication throughout his voluminous briefing before this Court, despite multiple opportunities to do so.[8]

---

[8] Witzke's motion for a temporary restraining order indicates that mail is an alternative method for communicating with individuals incarcerated at OCJ. See Br. in Supp. Mot. Temp. Restr. O. at 5 (representing that OCJ website states that individuals can choose to send messages via Smart Communications "[i]nstead" of utilizing "US postal mail") (emphasis added).

The magistrate judge's January 3, 2023 R&R recommends a denial of Witzke's motion for a temporary restraining order, noting that Witzke had not "allege[d] that he cannot communicate with detainees via alternative means such as mail through the United State Postal Service, or to visit detainees in person." 1/3/23 R&R at 6. Witzke objects to this factual finding and denies that he can visit detainees while his Smart Communications account is disabled, but he does not deny that he can contact detainees via regular mail. See Obj. to 1/3/23 R&R at 3 n.1. Additionally, Witzke made this same statement about visitation—and same omission about the availability of mail—in his response to Defendants' present motion to dismiss. See Resp. to Mot. to Dismiss at 17 n.9.

Witzke has also represented: "a public person who does wish to communicate via 'snail mail' (i.e., U.S. Postal Service) must send any letters to inmates to an address in Florida and Smart

12

Witzke's present objections also do not deny that he can communicate with OCJ detainees through mail.  Witzke cites OCJ communications rules that were included in the same filing as his complaint, stating: "You must use Smart Communications" for correspondences including "Incoming postal mail letters."  See Obj. to 3/23/23 R&R at 14 (quoting Compl. at PageID.11).  However, these rules are directed to OCJ detainees, not to those on the outside seeking to contact detainees.  See, e.g., Compl. at PageID.11 (differentiating between "you" and "the public user" and stating, "YOU ARE NOT ALLOWED TO SEND ANY FORM OF INMATE-TO-INMATE MAIL").  And notwithstanding his reference to these rules, Witzke still does not state that he is unable to communicate with detainees by mail.

Taking his pleadings as true, see Compl. ¶ 10, the Court finds that regular mail provides Witzke with an alternative means of communicating with OCJ detainees.  Witzke suggests that a right to communicate via the internet is distinct from a right to communicate via other methods.  See Obj. to 3/23/23 R&R at 17.  However, case law demonstrates that—notwithstanding a plaintiff's preference to correspond on matters including legal affairs through some other medium—access to regular mail provides a viable alternative means of communication under the second Turner factor.[9]  As evidenced by these authorities, the availability of communication by

---

Communications 'scans' those letters into its system and delivers them to OCJ detainees via the Smart Communications electronic tablet system."  Obj. to 1/3/23 R&R at 8.  Witzke concludes that Smart Communications "controls" this form of communication, but he does not assert that he cannot send letters to detainees via regular postal mail.  Id.

[9] The availability of mail as an alternate means of correspondence counsels in favor of dismissal on the face of the pleadings.  See, e.g., Sebolt v. Samuels, 749 F. App'x 458, 460–461 (7th Cir. 2018) (affirming dismissal of First Amendment challenge to restriction on incarcerated individual's email access where plaintiff had access to "regular mail," which he could use for purposes including obtaining legal services); Everheart, 2018 WL 475005, at *3 (dismissing First Amendment claim based on facility's denial of visitation where "nothing suggest[ed] that Plaintiff's ability to communicate with his sister through other means, including . . . the mail, were limited"); Vreeland v. Raemisch, No. 12-cv-01921, 2013 WL 5462299, at *8 (D. Colo. Sept. 30, 2013), aff'd sub nom. Vreeland v. Coffman, 663 F. App'x 597 (10th Cir. 2016) (granting motion to dismiss First Amendment challenge to prison's regulation restricting delivery of legal mail with unredacted sensitive information where provider of legal services could properly redact that

mail amply supports the conclusion that Witzke has failed to state a plausible First Amendment claim.

**b. Objection 1: Consideration of Case Law on Incarcerated Individuals' Rights**

In finding that Witzke has an alternative means of communication with OCJ detainees available, the magistrate judge notes that "prisoners do not have a constitutional right to a particular form of communication, such as access to email." 3/23/23 R&R at 11. Witzke challenges the comparison between his own First Amendment rights and those of incarcerated individuals, stating: "what a detainee at OCJ may or may not constitutionally be entitled to insofar as communication methods are concerned is irrelevant to the claims presented to the Court through Plaintiff's Complaint." Obj. to 3/23/23 R&R at 13.

This argument does not tilt the second <u>Turner</u> factor in Witzke's favor. Courts apply the <u>Turner</u> factors to First Amendment challenges brought by both those inside and outside incarceration facilities. <u>See Thornburgh</u>, 490 U.S. at 413. Case law on the First Amendment rights

---

content and thus provide plaintiff with "alternative means to receive his legal mail"); <u>Parkhurst v. Lampert</u>, No. 07-cv-279-B, 2010 WL 11618543, at *5–*6 (D. Wyo. Aug. 18, 2010), <u>aff'd</u>, 418 F. App'x 712 (10th Cir. 2011) (dismissing complaint and finding that plaintiff had failed to state First Amendment claim on allegations that prison had declined to distribute newsletters that plaintiff delivered to prison where plaintiff could still "individually distribute [] copies of the newsletter via individually and correctly addressed United States mail," thus "clearly me[e]t[ing] the second <u>Turner</u> factor").

Cases decided at the summary-judgment stage reinforce the principle that the availability of communication by mail defeats a First Amendment claim under <u>Turner</u>. <u>See, e.g.</u>, <u>Pell v. Procunier</u>, 417 U.S. 817, 824 (1974) (rejecting claim by plaintiffs associated with news media that denial of request to visit and interview incarcerated individuals violated those plaintiffs' First Amendment rights where "it [was] clear that the medium of written correspondence afford[ed] inmates an open and substantially unimpeded channel for communication with persons outside the prison, including representatives of the news media"); <u>Hanrahan</u>, 905 F.3d at 959–960 (finding that policy prohibiting face-to-face media interviews with restricted-population detainees was constitutional under <u>Turner</u> where "[a]lternative means of exercising the right remain[ed] available," including because "restricted population inmates [were] permitted to send out letters," and rejecting argument that there was "no ready substitute" for "in-person interviews") (punctuation modified).

of incarcerated individuals may be less analogous to Witzke's situation than case law on the rights of people on the outside, but these cases are assessed under the same standard and are not irrelevant. And Witzke's point does nothing to challenge the voluminous case law establishing that people on the outside—like those on the inside—have no right to a particular form of communication. See, e.g., Hanrahan, 905 F.3d at 958–960.

The second Turner factor points dispositively against Witzke.


### c. Remaining Turner Factors

The briefing on the R&R now before the Court does not address the first, third, and fourth Turner factors, but based on the parties' briefing on Defendants' motion to dismiss, the Court finds that all of these factors are in Defendants' favor. Defendants submit that the "restriction on communications" applied to Witzke is "reasonably related to a legitimate government interest of protecting inmates from pay-to-draft type legal services from the Plaintiff who is not licensed in the state court, or any court, to practice law but is nonetheless charging fees for his legal services and filings." Br. in Supp. Mot. to Dismiss at 19. Certainly the administrators of OCJ have a legitimate penological interest in preventing criminal activity within the facility—i.e., the unauthorized practice of law—and protecting OCJ detainees from such conduct.[10] Defendants

---

[10] "[V]alid penological objectives" under Turner include "deterrence of crime." O'Lone v. Est. of Shabazz, 482 U.S. 342, 348 (1987); see also Rogers v. Maricopa Cnty. Sheriff's Off., No. 07-641, 2008 WL 898721, at *2 (D. Ariz. Mar. 31, 2008) (dismissing First Amendment claim and identifying "prevention of criminal activity" as "legitimate penological interest[] which justif[ies] the regulation of both incoming and outgoing prisoner [communications]" under Turner) (punctuation modified). Defendants may properly regulate communications with OCJ detainees to protect them from unlawful commercial activity like the provision of unauthorized legal services. See, e.g., Perry v. Sec'y, Fla. Dep't of Corr., 664 F.3d 1359, 1365–1367 (11th Cir. 2011) (finding that rule limiting detainees' ability to solicit pen pals was constitutional where rule was intended to "help curb pen pal scams"); Hrdlicka v. Cogbill, No. 04-3020, 2006 WL 2560790, at

further point to Witzke's interference with the <u>Contreras</u> proceedings as an example of the harm he may pose to others if his communications are not restricted. Br. in Supp. Mot. to Dismiss at 20.

Defendants also consider their restriction "measured" and submit that no easy alternatives are available to achieve the same result. <u>Id.</u> at 20–21; <u>see also</u> Thornburgh, 490 U.S. at 418 (1989) (finding that "regulations, on their face, [were] not an 'exaggerated response' to the problem at hand: no obvious, easy alternative has been established"). Witzke declined to address Defendants' arguments on these points in his response to their motion to dismiss, <u>see</u> Br. in Supp. Resp. to Mot. to Dismiss at 13, 13 n.8, and he has added no further illumination in his present objections.

Without the benefit of any argument from Witzke, the Court is satisfied that these factors doom Witzke's claim. Cumulative consideration of the <u>Turner</u> factors demonstrates that Defendants' alleged disabling of Witzke's access to Smart Communications is "reasonably related to legitimate penological interests." <u>Thornburgh</u>, 490 U.S. at 413 (1989) (punctuation modified). The Court accepts the magistrate judge's recommendation to grant Defendants' motion to dismiss on Witzke's First Amendment claim, and it overrules Witzke's objections.

**B. Motion to Dismiss as to Procedural Due Process Claim**

Witzke cannot prevail on his procedural due process claim unless he "allege[s] facts showing (1) that he was deprived of a constitutionally recognized liberty or property interest; and (2) that he did not receive the required process." <u>Bright v. Gallia Cnty., Ohio</u>, 753 F.3d 639, 656 (6th Cir. 2014) (affirming dismissal of procedural due process claims).

---

*10 (N.D. Cal. Sept. 1, 2006) (finding that jail's refusal to accept and distribute particular magazine did not violate First Amendment where defendants argued, in part, that penological objectives included "preventing unlawful business transactions and illegal solicitation"); <u>see also</u> <u>Hawthorne v. Yanez</u>, No. 17-cv-04960, 2023 WL 2393782, at *9 (N.D. Cal. Mar. 7, 2023) ("Striving to protect prisoners from harm is a legitimate penological interest.").

The magistrate judge recommends a dismissal of Witzke's procedural due process because Witzke has not plausibly alleged that he had "a liberty interest in receiving emails and telephone calls from OCJ detainees."  3/23/23 R&R at 13–14.  Objecting to this proposed finding, Witzke cites cases where procedural due process claims were properly founded on allegations that facilities censored or outright rejected mail intended for incarcerated individuals.  See Obj. to 3/23/23 R&R at 22–23 (citing Hum. Rts. Def. Ctr. v. Bezotte, No. 11-cv-13460, 2016 WL 1258992, at *3 (E.D. Mich. Mar. 31, 2016) (finding that publisher of news for incarcerated individuals had "constitutionally protected interests" sufficient to establish procedural due process claim based on allegations that defendants "reject[ed] (i.e., [did] not deliver) mail" sent to "designated inmates"); Martinez, 416 U.S. at 418 ("The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment.")).

To prevail on his objection, Witzke must demonstrate that he has a constitutionally protected liberty interest in communicating with OCJ detainees through a particular medium—i.e., Smart Communications—when other means of communication remain available to him.  To do so, Witzke must "identify an 'independent source, such as state law,' that secure[d] certain benefits and that support[ed] claims of entitlement to those benefits."  Bethel v. Jenkins, No. 2:15-cv-3016, 2019 WL 917122, at *8–*10 (S.D. Ohio Feb. 25, 2019), report and recommendation adopted, No. 2:15-cv-3016, 2019 WL 1349391 (S.D. Ohio Mar. 26, 2019), aff'd, 988 F.3d 931 (6th Cir. 2021) (finding that incarcerated plaintiff had not established a "federally protectible interest" sufficient to support a procedural due process claim based on plaintiff's allegation that books were withheld from him) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Witzke has not plausibly pleaded that he has a constitutionally protected interest in access to the Smart Communications platform.  The cases he cites stand for the broad premise that

"[p]risoners and their correspondents [] have a liberty interest in 'uncensored communication by letter.'"  Banks v. Kelley, No. 5:18-cv-293, 2021 WL 1939671, at *7 (E.D. Ark. Apr. 22, 2021), report and recommendation adopted, No. 5:18-cv-00293, 2021 WL 1929819 (E.D. Ark. May 13, 2021) (quoting Martinez, 416 U.S. at 417)); see also Burrell v. Kienitz, No. 2:22-cv-97, 2022 WL 17175021, at *8–*9 (W.D. Mich. Nov. 23, 2022) (stating that "[i]t is well established that [incarcerated] Plaintiff ha[d] a liberty interest in receiving his mail" but dismissing procedural due process claim to extent it was based on alleged violation of "state procedure," which did not confer protected interest) (citing Martinez, 416 U.S. at 428)).[11]

Several courts have found that restrictions on communications in and out of incarceration facilities did not implicate protected interests in circumstances far more analogous to Witzke's than the cases he cites.  One inquiry that courts have treated as dispositive in determining whether a plaintiff has a protected property interest in a restricted medium of communication is whether there is "content-based censorship."  Banks, 2021 WL 1939671, at *7 (finding that prison policy "limiting inmates' incoming mail to three pages" did not "implicate[] a liberty interest" "because there [was] no content-based censorship"); see also Bratcher v. Clarke, No. 1:17-cv-474, 2018 WL 4658684, at *15 (E.D. Va. Sept. 26, 2018) (finding that prison policy of (i) rejecting noncompliant mail and (ii) photocopying that mail to provide to offender did not implicate protected liberty

---

[11] The citation to Bezotte does not avail Witzke for another reason: that court applied the Turner test to the challenged regulation to determine whether it violated procedural due process.  See 2016 WL 1258992 at *4–*5.  Though courts generally utilize the Turner test only in the First Amendment context, on its face, the Turner standard applies to the alleged "impinge[ment] on inmates' constitutional rights" generally.  Turner, 482 U.S. at 89.  Some courts apply Turner to determine whether an incarceration facility's restriction on communications violates procedural due process.  See, e.g., Bezotte, 2016 WL 1258992 at *4–*5; McCormick v. Reinkey, No. 1:21-cv-00454, 2022 WL 1422925, at *5 (D. Idaho May 5, 2022) ("The Amended Complaint fails to state a plausible due process claim for the same reason it fails to state a plausible First Amendment claim—the jail's policy is rationally related to legitimate penological interests.") (citing Turner, 482 U.S. at 89).  If this Court takes the approach applied in Bezotte, then Witzke's procedural due process claim fails because—as discussed—there was no plausibly stated constitutional violation under Turner.

18

interest because "no content [was] censored," and policy did not "prevent [plaintiff] from interpreting or responding to his mail"), <u>vacated and remanded on other grounds</u>, 770 F. App'x 105 (4th Cir. 2019) (finding claim moot following plaintiff's release from custody).

Here, there are no allegations that communications between Witzke and his intended recipients were censored based on content, and Witzke retains the option of communicating with OCJ detainees by mail. These factors counsel in favor of finding that he has no protected interest in a specific right to communicate with OCJ detainees via Smart Communications.

Another court has observed that the cases finding that outsiders had protected interests in communications with incarcerated individuals generally concerned "publishers['] communications and access to inmate <u>subscribers</u>." <u>Prison Legal News v. Cheshire</u>, No. 1:04-cv-173DAK, 2006 WL 1868307, at *9 (D. Utah June 30, 2006) (emphasis added). That court declined to "extend the current state of the case law to provide due process protections to publishers <u>soliciting</u> subscriptions." <u>Id.</u> (granting defendant summary judgment on publisher's due process claim based on facility's rejection of "promotional sample packets" rather than "paid[-]for subscriptions") (emphasis added).

Witzke has declined to provide any explanation for why he seeks to contact OCJ detainees, but the documentation provided by Defendants indicates that he seeks an end similar to that of the plaintiff in <u>Cheshire</u>: "to engage in commerce" by broadcasting his for-profit services. <u>Id.</u> This is not a protected right under the Constitution. <u>Id.</u>

Additionally, even if Witzke had a protected interest in contacting OCJ detainees, he has received sufficient process. Multiple courts have held that outsiders seeking to communicate with incarcerated individuals—specifically, publishers of journals or magazines targeting an incarcerated population—are "entitled to notice that [their communications] were rejected, but not an opportunity to appeal the rejection." <u>Hum. Rts. Def. Ctr. v. Henderson Cnty.</u>, No. 4:20-cv-

00159-JHM, 2022 WL 14740236, at *13–*14 (W.D. Ky. Oct. 25, 2022) (granting defendant summary judgment on publisher's due process claim where publisher "received sufficient notice" of rejection of mailings noncompliant with facility's policy where publications were stamped with labels including "return to sender per mail policy") (punctuation modified); see also Hum. Rts. Def. Ctr. v. Bd. of Cnty. Comm'rs for Strafford Cnty., New Hampshire, No. 22-cv-091-LM, 2023 WL 1473863, at *9–*10 (D.N.H. Feb. 2, 2023) (denying publisher's motion for preliminary injunction and finding that jail's policy of returning publisher's non-compliant mail via "return to sender" service likely provided sufficient process; also noting that "[r]equiring the Jail to institute a formal appeal process would be unduly burdensome"); Hum. Rts. Def. Ctr. v. Baxter Cnty., Arkansas, 360 F. Supp. 3d 870, 882–85 (W.D. Ark. 2019), aff'd, 999 F.3d 1160 (8th Cir. 2021) (granting summary judgment to defendant on publisher's due process claim based on facility's "rejection of [publisher's] unsolicited publications" where rejected publications were marked with "Return to Send Insufficient Address" sticker, stating: "the stickers would clearly have put [publisher] on notice of the reason why the mailings were not delivered to their intended recipient. . . . [T]hat is all the process [publisher] was due.").

According to Witzke's allegations, he received notice that his Smart Communications account had been disabled. See Compl. ¶ 13. At that point, he was aware that he could have sent whatever communication he wished to express to OCJ detainees through an alternative medium. Also balancing Defendants' avowed interest in protecting detainees from solicitors of unlicensed legal services, the Court finds that Witzke has received "all the process [he] was due." Baxter, 360 F. Supp. 3d at 884.

Dismissal of Witzke's procedural due process claim is proper both because he failed to state a protected interest and because he received all the process he was due. See Bright, 753 F.3d

at 656.  The Court accepts the magistrate judge's recommendation to grant Defendants' motion to dismiss and overrules Witzke's objections as to his procedural due process claim.

### C.  Remaining Objections as to Motion to Dismiss

Witzke's remaining objections have no merit.  Witzke offers commentary on the magistrate judge's recommendations regarding the application of the <u>Rooker-Feldman</u> doctrine and <u>Younger</u> abstention, but he does not object to the magistrate judge's conclusion that these doctrines do not apply.  <u>See</u> Obj. to 3/23/23 R&R at 6–12.  In fact, Witzke submits that the magistrate judge "reached the correct result."  <u>Id.</u> at 6.  The Court accepts the magistrate judge's recommendation to find that the <u>Rooker-Feldman</u> doctrine and <u>Younger</u> abstention do not apply to this case.

Witzke also challenges the magistrate judge's recommendations that the Court (i) <u>sua sponte</u> dismiss the unidentified Defendant John Doe and (ii) decline to exercise supplemental jurisdiction over Plaintiff's state-law claim of defamation—but only "if the district court determines upon <u>de novo</u> review that Plaintiff has failed to state a plausible claim upon which relief may be granted under the First and Fourteenth Amendments."  <u>Id.</u> at 24.  This Court has indeed determined that Witzke has failed to plausibly state claims under the First and Fourteenth Amendment, and so it accepts the R&R on these points.

In sum, the Court accepts the magistrate judge's March 23, 2023 R&R, overrules Witzke's objections to that R&R, grants Defendants' motion to dismiss, dismisses Witzke's First and Fourteenth Amendment claims with prejudice, dismisses Witzke's defamation claim without prejudice, and dismisses all Defendants.

**D. Motion for Temporary Restraining Order**[12]

Witzke moves for a temporary restraining order on his First Amendment and procedural due process claims. See Mot. for Temp. Restr. O. As discussed, the Court has found that these claims are without merit. Thus, Witzke has no likelihood of success on the merits, dooming his motion for a temporary restraining order. See, e.g., Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998) (affirming denial of preliminary injunction motion, explaining: "[I]n the First Amendment context . . ., the crucial inquiry often is, and will be in this case, whether the [challenged conduct] is likely to be found constitutional."); Michael v. Futhey, No. 08-3932, 2009 WL 4981688, at *29 (6th Cir. Dec. 22, 2009) (stating that injunctive relief cannot be granted "where there is simply no likelihood of success on the merits") (punctuation modified).

Accordingly, the Court denies Witzke's motion for a temporary restraining order, and it accepts the January 3, 2023 R&R recommending a denial of that motion.

**E. Motion for Reconsideration**

As noted, the magistrate judge issued an R&R recommending a denial of Witzke's motion for a temporary restraining order, and on January 7, 2023, Witzke filed objections. Defendants' response to Witzke's objections was due 14 days after the filing of Witzke's objections. See 1/3/23 R&R at 8. The deadline passed without Defendants having filed a response. The Court issued an order requiring that Defendants file a response within seven days, see 3/10/23 Order (Dkt. 34), which Defendants did file (Dkt. 37).

---

[12] Courts weigh four factors when considering a motion for a temporary restraining order or for a preliminary injunction: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." 5455 Clarkins Drive, Inc. v. Poole, 384 F. App'x 458, 461 (6th Cir. 2010) (punctuation modified).

Witzke now seeks reconsideration of the Court's order directing Defendants to file a response, arguing that the court made a "mistake" under Local Rule 7.1(h)(2)(A).  See Br. in Supp. Mot. for Recons. at 3–7.  Witzke submits that Federal Rule of Civil Procedure 6(b) disallows the Court's sua sponte order.  See id.  This rule states: "When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(A)–(B).  In Witzke's view, because the time for Defendants to file a response to Witzke's objections had expired, the Court could extend the time for Defendants to file a response only "on motion made" and upon a showing of "excusable neglect" under Rule 6(b)(1)(B).

As discussed, this Court denies Witzke's motion for a temporary restraining order upon a finding that there is no merit to Witzke's claims.  Defendants' response to Witzke's objections have no bearing on this decision.  Accordingly, the Court denies as moot Witzke's motion for reconsideration.

Witzke's motion also has no merit.  If Defendants had moved for an extension after missing their deadline, then Rule 6(b)(1)(B) would govern the Court's review of their motion.  But Rule 6 does not prevent a court from directing parties to present their positions on issues before the court. See, e.g., United States v. Flying Horse, No. 5:20-cr-50035, 2021 WL 3667264, at *2 (D.S.D. Aug. 18, 2021) (explaining that court was properly operating within its "broad discretion" when it ordered party to file a response to a pending motion where deadline had passed with no response filed) (punctuation modified).  It was not a "mistake" for the Court to order Defendants to file a response to Witzke's objections.  E.D. Mich. LR 7.1(h)(2)(A).

**F.  Motion to Disqualify**

23

Witzke moves for the undersigned to disqualify himself under 28 U.S.C. § 455(a). Section 455(a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). When considering a § 455(a) motion, "the judge is free to make credibility determinations," and "the ultimate question is whether a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." Scott v. Metro. Health Corp., 234 F. App'x 341, 354 (6th Cir. 2007) (punctuation modified). Under this standard, "a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." Id. at 352 (affirming denial of recusal motion brought under 28 U.S.C. § 455) (punctuation modified). "The burden is not on the judge to prove that he [or she] is impartial." Id.

Witzke submits that Defendants "are attempting to turn this case into one of UPL [unauthorized practice of law] purportedly by Plaintiff." Br. in Supp. Mot. for Recusal at 6. He observes that the undersigned "handled UPL matters as a part of his duties when acting as 'Special Counsel'" for the Michigan State Bar Committee on UPL prior to the undersigned's service as a judge for the Oakland County Circuit Court beginning in 2004. Id. Witzke also asserts that the undersigned "certainly knows Defendant Bouchard (at least in his official capacity)" because Bouchard's office provided the undersigned with courtroom security and took responsibility for detaining defendants while the undersigned was a circuit court judge. Id. at 2.

The speculation that the undersigned may have crossed paths with a defendant in this case is far from sufficient to cast doubt on the undersigned's impartiality in this case. Much closer relationships between judges and individuals related to cases have been found to be insufficient to merit recusal under § 455. See, e.g., Baker v. City of Detroit, 458 F. Supp. 374, 377 (E.D. Mich. 1978) (finding that judge's "personal friendship" with mayor of Detroit—"a nominal party to this action"—did "not support a claim of lack of impartiality because it [was] not supported by 'facts

24

which would raise a reasonable inference of lack of impartiality in the context of the issues presented'"); United States v. Mady, No. 04-80408, 2006 WL 2420513, at *1 (E.D. Mich. Aug. 22, 2006) (finding that judge's acknowledged "working and social relationship" with father of victim of defendant's alleged crimes was not reasonable basis for § 455 recusal). Even less meritorious is the suggestion that the undersigned's general work with UPL matters some two decades ago creates a ground for reasonably doubting his impartiality in this proceeding, merely because Defendants introduce Witzke's alleged UPL violations as context for their defense to his claims.

A reasonable, objective person would not doubt the undersigned's impartiality on the grounds asserted by Witzke. See Scott, 234 F. App'x at 354. The Court denies his motion to disqualify.

## III. CONCLUSION

For the reasons explained above, the Court (i) accepts the recommendations in the March 23, 2023 R&R (Dkt. 41), (ii) overrules Witzke's objections to that R&R (Dkt. 42), (iii) grants Defendants' motion to dismiss (Dkt. 26), (iv) dismisses Witzke's First and Fourteenth Amendment claims with prejudice and dismisses his defamation claims without prejudice, (v) denies Witzke's motion for a temporary restraining order (Dkt. 3), (vi) accepts the recommendations in the January 3, 2023 R&R (Dkt. 13), (vii) denies as moot Witzke's motion for reconsideration (Dkt. 35), and (viii) denies Witzke's motion to disqualify (Dkt. 29).

SO ORDERED.

Dated:  June 9, 2023                                    s/Mark A. Goldsmith
         Detroit, Michigan                             MARK A. GOLDSMITH
                                                        United States District Judge